Eastern Dis. *June*, 1834.

STATE OF LOUISIANA *vs.* BANK OF LOUISIANA.

STATE OF LOUISIANA *vs.* BANK OF LOUISIANA.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

6L 745
52 1394

6 745
109 666

All the property of a Bank after payment of its debts and expenses, is the exclusive property of its stockholders *for the time being.*

EASTERN DIS.
June, 1834.
─────────
STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

The ownership of shares in the capital stock of a Bank by the State gives to it precisely the same right which it gives to other stockholders *and no more.*

The profits of a Bank are divisible among *all* the stockholders except so much thereof as in the discretion of the board of directors, is necessary for the safety of the Bank and for the purpose of preserving its integrity.

Ownership is the right of natural persons; but a corporation, as a Bank, which is an artificial person may hold property for a particular purpose, which is *de facto* the property of the real persons composing it.

The net profits arising from the sale of the state bonds by the Bank of Louisiana in 1824, belong exclusively to the stockholders *at the time,* in proportion to the stock held and actually paid in by them respectively.

The law does not authorise interest to be allowed on the share of profits belonging to a portion of the stockholders, which is retained among the funds of the Bank for a series of years.

The board of directors of a Bank is invested with discretionary power of judging what portion of the profits it is advisable from time to time to divide among the stockholders.

A very strong case must be made to require a court of justice to interfere with the discretion of the directors in relation to the *quantum* of profits of the Bank which they are to divide.

If the directors honestly err in exercising their discretion in manageing the funds of the Bank, it is not clear that courts possess the power to correct their mistakes.

This is an action commenced by the Attorney General, in the name and for the use of the state of Louisiana, against the Bank of Louisiana, in obedience to a law of the Legislature passed the 7th March 1834. This law instructs the Attorney General to sue the Bank in order to compel it to place to the credit of the state, as available means on the

EASTERN DIS.
June, 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

first of July following, the portion of the profits made on the sale of the state bonds by the Bank, belonging to the state; the portion of the profit and loss account of said Bank to which the state is entitled; and all other funds, which in the opinion of the Attorney General, the state may be justly entitled to demand from the Bank. *Vide session acts, March* 7, 1834, *p.* 61.

On the 4th of April 1834, the Attorney General filed his petition in court, in which he alleges that the sale of the state bonds by the Bank produced over and above the sum of *two millions*, the state's portion of the capital stock, the net sum of three hundred and twenty one thousand eight hundred and twenty two dollars clear profit, which belonged to the stockholders *at that time*, in proportion to the amount of stock held by them respectively; that the proportion of the state to these profits is as two millions are to one hundred and thirty eight thousand eight hundred and forty dollars, the amount of stock paid in by individual stockholders, and amounting to the sum of three hundred thousand eight hundred dollars, which with the accruing interest according to the statement of the treasurer annexed, forming an aggregate sum of four hundred and fifty five thousand five hundred and thirty six dollars, he prays may be placed to the credit of the state on the books of the Bank, and applied to the payment of the first series of the state bonds which fall due the first day of July 1834, to the amount of six hundred thousand dollars. The Attorney General further states that according to the estimate of the treasurer, of the operations of the sinking fund, the state is entitled to three hundred and forty one thousand five hundred and fifteen dollars, which he prays may be applied to the payment of said state bonds. And he further alleges and prays that the Bank be required to divide all the profit and loss account above two hundred and fifty thousand dollars, which he states amounts to two hundred and eighteen thousand dollars, and apply the portion of the state to the payment of said bonds.

The estimate of the State Treasurer of the profits arising from the sale of the State bonds is as follows:

EASTERN DIS.
June, 1834.

STATE OF
LOUISIANA.
vs.
BANK OF
LOUISIANA.

"Statement of the share of the state in the sale of the bonds, with interest thereon from January 1826 to July 1834.

| | |
|---|---:|
| The share of the state in the profits is | $300,800 |
| Interest from 1826 to 1827 at 5 per cent. is | 15,040 |
| | 315,840 |
| Interest on $315,840 from 1827 to 1828 is | 15,792 |
| | 331,632 |
| Interest on $331,632 from 1828 to 1829 is | 16,587 60 |
| | 348,219 60 |
| Interest on $348,219 60 from 1829 to 1830 is | 17,411 |
| | 365,630 60 |
| Interest on $365,630 60 from 1830 to 1831 is | 18,281 50 |
| | 383,912 10 |
| Interest on $383,912 10 from 1831 to 1832 is | 19,195 60 |
| | 403,107 70 |
| Interest on $403,107 70 from 1832 to 1833 is | 20,155 30 |
| | 423,263 |
| Interest on $423,263 from 1833 to 1834 is | 21,163 15 |
| | 444,426 15 |
| Interest from January 1 to July 1, 1834, on $444,426 15, . . . . . . . . . . | 11,110 60 |
| Total, . . | $455,536 75 |

(Signed)   F. Gardère, state treasurer.

"Statement of the operation of the sinking fund belonging to the state, in the Bank of Louisiana.

On the 2d of August 1825, the Bank had to advance to the state for the payment of the interest on its bonds, the sum of thirty thousand dollars ($30,000.) This amount was reduced on the 24th of July 1826, to ten thousand dollars ($10,000) by the increase of the dividend, and the Bank is consequently entitled to claim interest on thirty

thousand dollars, for one year viz: from the 2d of August 1825 to 24th July 1826, at 5 per cent. per annum, is $1,500. ═══

On the 23d of July 1827, the surplus of dividend upon the stock of the state after paying the annual interest on the bonds, was twenty thousand dollars, as follows:

Dividend on 2,000,000 at 4 per cent. . . $80,000
Interest on 2,000,400 at 5 per cent. . . 60,000
Difference, $20,000

The state, on this day, after paying the Bank the amount advanced, had ten thousand dollars placed to the credit of the sinking fund. The Bank is entitled to claim interest on ten thousand dollars for one year, say five hundred dollars, which added to the one thousand five hundred dollars mentioned above, forms a total of two thousand dollars.

From July 1827, up to the present time, the sinking fund has increased yearly forty thousand dollars, as the accounts of the Bank will show, viz:

1827, July, balance to the credit of the sinking fund, . . . . . . . . . . . . . . $ 10,000
1828, January, interest on ten thousand dollars, from July to date, at five per cent. per annum is . . . . . . $ 250.
Surplus of dividends after paying interest is . . . . . . . . . . $ 20,000
1828, July, interest on thirty thousand dollars from January to date is . . . . $ 750
Surplus dividend, . . . . . . . . . $ 20,000
1829, January, interest on fifty thousand dollars from July to date is . . . . . . $ 1,250
Surplus dividend, . . . . . . . . . $ 20,000

Hence it appears that on the last day of December 1828, the account of interest is nearly balanced with a small difference of two hundred and fifty dollars in favor of the state.

(Signed) F. Gardère, state treasurer.

Eastern Dis.
June, 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

1829, January, amount to the credit of the sinking fund, . . . . . $ 70,000

1829, July, interest on seventy thousand dollars from January to date is . . . . . . . . . . $ 1,750

1829, July, dividend on *two* millions at four per cent. is $ 80,000

Interest on bonds . . . . 60,000

Surplus . . . . . . . $ 20,000 . $ 20,000

                                              $ 91,750

1830, January, six months interest on ninety one thousand seven hundred and fifty dollars is . . . . . . . . . . . . 2,293 75

Surplus dividend *ut surpra*, . . . . . 20,000

                                              $114,043 75

1830, July, six months interest on one hundred and fourteen thousand and forty three dollars and seventy five cents is . . . 2,851 10

Surplus dividend . . . . . . . . . 20,000

                                              $136,894 85

1831, January, six months interest on one hundred and thirty six thousand eight hundred and ninety four dollars and eighty five cents is . . . . . . . . . . 3,422 37

Surplus dividend . . . . . . . . . 20,000

                                              $160,317 22

1831, July, six months interest on one hundred and sixty thousand three hundred and seventeen dollars and twenty two cents is 4,007 92

Surplus dividend . . . . . . . . 20,000

                                              $184,325 14

1832, January, six months interest on one hundred and eighty four thousand three hundred and twenty five dollars and fourteen cents is . . . . . . . . . . 4,608 12

Surplus dividend . . . . . . . . 20,000

                                              $208,933 26

EASTERN DIS.

STATE OF
LOUISIANA
*vs.*
BANK OF
LOUISIANA.

|  | |
|---|---:|
| *Brought Forward.* . . | $208,933 26 |
| 1832, July, six months interest on two hundred and eight thousand nine hundred and thirty three dollars is . . . . . . . | 5,223 32 |
| Surplus dividend . . . . . . . . . . | 20,000 |
|  | $234,156 58 |
| 1833, January, six months interest on two hundred and thirty four thousand one hundred and fifty six dollars and fifty eight cents is . . . . . . . . . . . . . | 5,853 90 |
| Surplus dividend . . . . . . . . . . | 20,000 |
|  | $260,010 48 |
| 1833, July, six months interest on two hundred and sixty thousand and ten dollars and forty eight cents is . . . . . . | 6,500 |
| Surplus dividend . . . . . . . . . . | 20,000 |
|  | $286,510 73 |
| 1834, January, six months interest on two hundred and eighty six thousand five hundred and ten dollars and seventy three cents is . . . . . . . . . . . . . | 7,162 75 |
| Surplus dividend . . . . . . . . . . | 20,000 |
|  | $313,673 48 |
| 1834, July, six months interest on three hundred and thirteen thousand six hundred and seventy three dollars and forty eight cents is . . . . . . . . . . . | 7,841 81 |
| Surplus dividend . . . . . . . . . . | 20,000 |
|  | $341,515, 29 |

March 14th, 1834.

(Signed)   F. Gardère, state treasurer."

The counsel for the Bank excepted to the part of the petition in relation to the profits made on the sale of the state bonds, on the ground that the Bank had been sued for this fund in 1827, and judgment pronounced in its favor,

EASTERN DIS.
June, 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

and that this matter was now *res judicata. Vide* 5 *Martin,* *N. S.* 337. And further that the Bank is not responsible for interest; or in any other manner on account of the sinking fund, but that the same is under the exclusive control of commissioners; and they plead the general issue to the merits, except as to matters specially admitted.

The district judge after examining the evidence of the case and hearing the arguments of counsel, ordered two hundred and one thousand and twelve dollars of the profits made on the sale of the bonds, to be paid over to the commissioners of the sinking fund; and that one hundred thousand dollars of the surplus fund, for profit and loss account, be divided among the stockholders. From this judgment both parties appealed.

This cause was argued at this term by *Mr. Mazureau, Attorney General,* for the state, and by *Mr. Pierce* and *Mr. Slidell* on the part of the Bank of Louisiana.

MARTIN, J., delivered the opinion of the court.

The Attorney General alleges that the state is owner of twenty thousand shares of the capital of the bank, of the value of two million dollars, being one half of said capital, for which bonds of the state for the sum of two million four hundred thousand dollars, were furnished to the bank, payable in instalments of six hundred thousand dollars each on the 1st days of July 1834, 1839, 1844 and 1849, and bearing interest at five per cent. a year, payable semi-annually; and according to a provision of the charter, these bonds were made payable to the president and directors of the bank, who were empowered to endorse them, and all the expenses attending the isssuing of these bonds were to be borne by the bank. That the bank was to sell these bonds for specie, at a rate not under that at which it received them from the state, viz: one hundred dollars of bonds for eighty-seven and one-third dollars of specie. The bank was empowered to contract for the payment of the semi-annual interest accruing on the bonds, in any other place than the city of New-

EASTERN DIS.
*June, 1834.*

STATE OF
LOUISIANA
*vs.*
BANK OF
LOUISIANA.

Orleans, but the state stipulated that any additional charge or expense as for loss or exchanges or otherwise should be borne by the bank, and it was agreed that any benefit by gain of exchange or otherwise, resulting from the payment of such interest, at such other place than New-Orleans should be enjoyed by the bank. That the sale of these bonds has produced over and above the two million dollars, in payment of which, they had been furnished by the state, a profit of three hundred and twenty-one thousand eight hundred and sixty-two dollars, at a time when the capital of the bank subscribed for, and paid in by other stockholders than the state, amounted only to one hundred and thirty-eight thousand eight hundred and forty dollars, and the profit thus made was the rightful property of the stockholders then existing, in the proportion of the portion of the then capital by them respectively paid in; that the portion of the capital then paid in was two million one hundred and thirty-eight thousand eight hundred and forty dollars, equal to twenty-one thousand three hundred and eighty-eight shares; twenty thousand of which belonged to the state, giving right to a dividend of three hundred thousand eight hundred dollars, for which the bank ought immediately to have credited the state, which it refused to do, under the pretence that its contract with the purchaser of the bonds contained a clause by which certain resolutions of the board of directors had been incorporated in the contract, and according to which the bank was bound to forbear any division of the profits it might make on the sale of the bonds of the state, except in proportion as the dividends on the stockholders by the state shall have left a surplus, after paying the semi-annual interest to be applied to the redemption of the bonds until the amount of four hundred thousand dollars shall have been redeemed.

The Attorney General denied the right of the board of directors to pass this resolution, or to incorporate it in the contract for the sale of the bonds, and averred that, if all, or any important part of the bonds were sold under the faith of the bank pledged by the resolution, the effect of the contract could not be such as to impair the States' right to these pro-

EASTERN DIS.
June, 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

fits, and it was the duty of the board to have placed the shares of the state therein, under the administration of the treasurer of the state, and the president and cashier of the bank as the commissioners of the sinking fund, created by the charter and in whose hands the bank was bound to place the surplus of every dividend, after paying the semi-annual interest, to constitute a fund for the redemption of the bonds.

The Attorney General urged the claim of the state to an interest of five per cent. at least on three hundred thousand eight hundred dollars, from January 1st 1826, to July 1st 1834, which added to the principal, makes an aggregate sum of four hundred and fifty-five thousand five hundred and thirty-six dollars and seventy-five cents, which he prays the court to declare an available sum due to the state on the 1st of July next, applicable by the bank to the redemption of the first series of bonds payable on that day, which the bank refuses to allow under the pretence; 1st, that until all the state bonds are paid, it is impossible to ascertain the amount of the profits made on their sale; 2d, that of such profits when known, the state is entitled to one moiety only; 3d, that the state has not in bank any fund available for the payment of the bonds, except three hundred and twenty-eight thousand dollars, including the probable dividend payable on the 1st of August next.

The Attorney General complains that the commissioners of the sinking fund ought to have a much larger sum for the use of the state; that mentioned by the bank is composed of the surplus semi-annual dividends belonging to the state, out of the dividends declared until now, after paying the semi-annual interest due by the state on the bonds and interest upon the sinking fund at five per cent., which was allowed by the bank from the year 1830 only, while it ought to have been allowed from the moment the first item on the credit of the state was entered, and accordingly the state claims this deficiency of interest which, according to a statement annexed to the petition, makes the sum due to the state on the sinking fund three hundred and forty-one thousand five hundred and fifteen dollars and twenty-nine cents on the 1st day

EASTERN DIS.
June, 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

of July next, which added to four hundred and fifty-five thousand five hundred and thirty-six dollars and seventy-five cents above-mentioned, raises the amount of money in bank, available to the state, in the redemption of the first series of bonds payable on the 1st of July next, to seven hundred and ninety-seven thousand and fifty-two dollars.

The attorney general further shows that the balance of the profit and loss account, which is at present, and probably on the 1st of July next will be not less than four hundred and sixty-eight thousand dollars, after paying the semi-annual dividend is unjustly detained; that a reserve of two hundred and fifty thousand dollars is as much as prudence and caution can require to meet any deficiency which may happen.　He therefore prays that the board may be ordered to divide the surplus, that two hundred and eighteen thousand dollars may be immediately divided, and the half thereof one hundred and nine thousand placed to the credit of the state, which will make the sum due to the state in bank and available for the payment of the bonds, nine hundred and six thousand dollars and fifty-two cents.

The bank opposed the exception of *res judicata* to so much of the petition as alleges the illegality of the resolutions of the board, incorporated in the contract for the sale of the bonds of the state, the highest court of justice of this state having adjudged to be otherwise in a suit between the parties to the present.

To that part of the petition which requires a division of the alleged profits on the sale of the state bonds, the bank opposed the exception of prematurity on the ground that the relief prayed for cannot be granted until bonds of the state to the amount of four hundred thousand dollars have been redeemed, as until then no part of said alleged profits can be divided.

To such part of the petition as demands payment of the amount of the sinking fund therein referred to and claims interest, the bank urged as an exception; that it is not responsible for the amount of said fund, which is under the exclusive control and administration of commissioners desig-

Eastern Dis
June 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

nated by the charter, and the bank is only liable to the commissioners for the surplus of dividends, coming to the state after payment of the semi-annual interest accruing on the bonds of the state.

The bank prayed for the abatement and erasure of the parts of the petition excepted to; and insisting on such exceptions,

The bank answered that it denied all and every allegation in the petition, not therein after especially admitted.

Under these protestations the bank said, that true it is that bonds of the state to the amount of two million four hundred thousand dollars were issued and delivered to the bank as is set forth in the petition, and negociated and sold as is there stated, but under the guarantee and for the account of the bank on the terms and conditions mentioned; and the authority and right of the board to pass certain resolutions which were incorporated in the contract entered into with the purchasers of the bonds, has been recognized and adjudged to be legal in a suit between the state and the bank.

That since the decision of the Supreme Court in said suit, nearly all the shares in the capital of said bank have been sold, aliened and transfered to persons who acquired them with the knowledge and under the faith of said decision and accordingly paid therefor at a higher rate than they otherwise would have done; that if a division of the pretended profits resulting from the sale of the bonds could, at any time have been justly been made, and if the then stockholders were alone entitled to participate therein, which the bank denied, the division should have been made by the directors, under whose administration the sale was effected, and such directors were alone responsible for the misapplication of such supposed profits; that the petition of the state is premature, and the relief sought cannot be granted, because until the payment by the state of all the bonds to the amount of six hundred thousand dollars, no portion of the profits can be divided; and that the state has no right of action. That the bank is not responsible for the management of the sinking fund which is placed by the charter un-

EASTERN DIS.
June, 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

der the exclusive control and management of commissioners, one of whom is the Treasurer of the State; that the amount in it could at any time have been withdrawn from the bank by the commissioners, and was ever subject to their order, and the bank is not responsible for any interest prior to the 9th of February 1831, when by an arrangement with the commissioners, the bank agreed to allow five per cent.; that the directors have, in compliance, at stated periods, made a division of such parts of the profits of the bank as to them appeared advisable, and no other or greater dividend could have been made by them, with a due regard to the interest of the stockholders, and the terms of the contract under which the sale of the bonds took place; that they acted in good faith, and used sound discretion in the discharge of their trust, under the charter which constitutes them sole judges of the portion of the profits which it is advisable to divide.

The District Court decreed that the sum of three hundred and fifty thousand dollars of the profits made by the bank on the sale of the bonds be divided among the stockholders in the proportion in which the dividend was made in July 1825, viz: two hundred one thousand and twelve dollars 86 cents, to be set a part and paid into the sinking fund on the portion thereof coming to the state, and eight thousand nine hundred forty-nine dollars and fourteen cents, be divided among the other stockholders, and that, in addition to any ordinary dividend at the usual period, viz: in August next, the directors divide and apportion among the stockholders the sum of one hundred thousand dollars out of the surplus fund, so that the portion thereof be available to the commissioners of the sinking fund on the 1st day of July next; and that the bank pay costs.

From this judgment both parties appealed.

The exception of *res judicata* which the counsel of the bank urges as resulting from the judgment of this court in a suit between the parties to the present in 1827, appears to us of very little avail. All that was then decided is, that the clause in the contract for the sale of the bonds which provi-

EASTERN DIS.
June, 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA

ded for the retention by the bank of the profits on the bonds, as a security for the purchasers, for the payment of four hundred thousand dollars of the bonds of the first series, ought to have its effect. We cannot see on what ground it may be urged that this measure was illegal. The bonds were the absolute property of the bank; the board had the management of all the affairs of the corporation, and the charter has made it their duty to sell the bonds and imposed no other restriction on them, in the sale except the obligation to sell for specie, and for no less a sum than that for which they had been given to the bank.

The District Court in our opinion did not err in overruling this exception and in deciding that the approaching maturity of the bonds of the first series which will become payable in less than a week had removed the obstacle which the contract had created to the immediate division of the profits among those who are entitled to receive them; and that the state might justly claim a decree directing that the share to which the state was entitled in those profits should be an available fund to be applied towards the discharge of the bonds, to secure the payment of which the whole profits were retained.

Such a decree, instead of being in opposition to that of this court in the year 1827, would be ancillary thereto; and instead of violating the contract with the purchasers of the bonds, would enforce its execution. And this is an answer also to the objection that the suit is premature.

I. On the merits the case presents two very important questions for solution. 1st. What is the sum to which the state will be entitled on the 1st July?

*All the property of a bank, after payment of its debts and expenses, is the exclusive property of its stockholders for the time being.*

All the property of a bank after the payment of its debts, *deducto œre alieno*, is the exclusive property of its stockholders for the time being, no one else can have any right thereto. It is indeed burdened with a sort of servitude, the obligation of keeping the capital in its original integrity, and of applying it to the object for which it was created.

If the state has any right on the property of a bank, it

must be in consequence of some clause in its charter, unless perhaps the right of taxation.

The ownership of shares in the capital gives to the state precisely the same right which it gives to other stockholders and no more.

The profits of a bank are divisible among all the stockholders, except so much thereof as the board may deem it advisable to reserve for the purpose of preserving the integrity of the stock, and to meet accidents or contingencies which might jeopardize this integrity.

We know of no difference or distinction between the ordinary profits of a bank made by discount and exchange, and those that may result from any other operation.

Strickly speaking, ownership is the right of a natural person or persons only. Artificial persons may hold property for a particular purpose, but *de facto*, this property is really that of the natural persons who compose the corporation; with the exception of such corporations, the members of which are mere trustees, as the regents of an university; the trustees of a college or hospital; in such a case the property holden by the corporation does not belong to the ratural persons who compose it, but is owned by the public.

If these premises be true and we believe them incontestible, the profits made by the sale of the bonds, belonged to the bank, or in other words, to the then existing stockholders, in the proportion which the number of shares subscribed for and paid in by each of them respectively, bore to the total number of shares then subscribed for and paid in.

The total amount of shares subscribed for and paid in on the day of the sale, being one hundred and thirty-eight thousand eight hundred and fouty dollars, and that paid by the state, two million dollars, it follows that the state is to parti.cipate in these profits, in the proportion which the latter sum bears to the former.

The profits are stated on the books of the bank, at three hundred and twenty-one thousand eight hundred and twenty-two dollars and twenty-five cents, which is the balance left, after deducting from the sum received from the purchaser, after deducting charges and two millions of dollars the sum

The ownership of shares in the capital stock of a bank by the state gives to it precisely the same right which it gives to other stockholders *and no more.*

The profits of a bank are divisible among *the* stockholders except so much thereof as in the discretion of the board of directors, is necessary for the safety of the bank, and for the purpose of preserving its integrity.

Ownership is the right of natural persons; but a corporation, as a bank, which is an artificial person may hold property for a particular purpose, which is *de facto* the property of the real person composing it.

The nett profits arising from the sale of the state bonds, by the bank of Louisiana in 1824, belong exclusively to the stockholders *at the time*, in proportion to the stock held and actually paid in by them respectively.

EASTERN DIS.
June, 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

for which the bonds were given to the bank. This sum we cannot however consider as the nett profits of an operation, by which the bank assumed a very considerable burthen. For it undertook at its risk and expense to transmit and distribute in London the interest accruing on the bonds; this interest being paid by the state in New-Orleans.

It appears that the charges attending the transmission and distribution of this interest, cost to the bank a yearly sum of nine thousand dollars on an average, making for the ten years preceding the maturity of the bonds of the first series, a sum of ninety thousand dollars. At the same rate the cost during the fifteen following years will be an aggregate sum of seventy thousand dollars, in all one hundred and sixty thousand dollars.

Had not the board been prevented by a clause in the contract from an immediate division of the profits, their real amount might have been ascertained by deducting the actual *quantum* of burthen to its cost, and deducting it from the former sum.

But the contract preventing the then existing stockholders from receiving during ten years their shares of the profits, imposed on them a burthen, and by giving to the bank the use of these profits during that period, conferred on it advantage which the board could not honestly have consented to, without intending to afford them a proper remuneration.

The burthen imposed on the bank by the contract was a sum of one hundred and sixty thousand dollars, payable by irregular annual instalments, during twenty-five years; this the bank has paid or is bound to pay; but the bank has, under a clause of the contract, had the use of a sum the property of the original stocholders, which at the lowest rate of interest has brought a yearly sum of sixteen thousand dollars, from which, deducting the yearly charges for remittances and distribution of nine thousand dollars, there remains a yearly sum of seven thousand dollars, which at the maturity of the bonds of the first series will make that of seventy thousand dollars, the aggregate amount of the costs and expenses of remittances and distribution of interest, during the fifteen following years to the maturity of the bonds of the last series.

EASTERN DIS.
June, 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

It is but justice to the able and honest citizens who composed the board of directors at the end of 1824, to conclude, that in their opinion the advantage resulting to the bank from the retention of the gross profits during ten years was a fair equivalent for the burthen which the contract had imposed on the bank, and that they believed and every subsequent board has believed, that the sum of three hundred and twenty-one thousand eight hundred and twenty-two dollars and twenty-five cents, is the net profit on the sale of the bonds, unaffected by the charges and risk of remittances and distributions, for which the original subscribers have given a sufficient compensation by the delay of ten years in the enjoyment of their profits

Had the board meant to deprive these stockholders in favor of subsequent ones, during ten years, of the advantages resulting from the employment of a sum of three hundred thousand dollars and upwards, without any equivalent by compensation or otherwise, their negligence to provide a remuneration would have been the *crassa negligentia,* which the law considers as fraud.

In the year 1827, it was urged on the part of the state that the charter had directed them to be paid out of the funds of the bank, and therefore they were to be viewed as a *bonus,* which the state had stipulated for; but the argument does not appear to us tenable. These charges were not necessarily to be incurred, they were the result of a contract entered into by the bank and must be borne by those who reaped the profits resulting from it.

We conclude that the share of the state in these profits is three hundred thousand nine hundred and thirty-one dollars.

II. The next question relates to the interest which the state claims on the sum in the sinking fund, previous to an arrangement between the commissioners of that fund, and the board in 1831, by which the latter agreed to pay an interest of five per cent. on the sums the state had in that fund. We think with the district court, that the law does not authorise the court to give it.

The law does not authorise interest to be allowed on the share of profits belonging to a portion of the stockholders which is retained among the funds of the bank for a series of years.

96

EASTERN DIS.
June, 1834.

STATE OF
LOUISIANA
vs.
BANK OF
LOUISIANA.

The legislature hás expressly forbidden courts of justice to allow interest on their judgments, except in cases in which the law permits them to be stipulated. *Code of Practice*, 553. The réstriction is more extensive; it forbids interest except in cases in which the law permits to grant it; *permet de l'accorder.*

It expressly forbids its allowance on unliquidated claims. *C. Pr.* 554.

It permits it to be stipulated on loans of money or other moveable property. *La. Code* 2894; and on sales. *Id.* 2531.

It is allowed without having been stipulated for, in certain sales. *La. Code* 1204.

So it is against a tutor who fails to invest funds of his minor. *La. Code* 241; and on the balance he owes. *Id.* 353 and 1141.

Against a partner who fails to put into the partnership funds which he is bound to bring, or employs partnership money for his private account, *La. Code* 2829; against a defaulting borrower, *Id.* 2893; or a depositary, *Id.* 2919; attorney, 2981; against him who has knowingly received money not due by the payor, through the ignorance or error of the latter, *Id.* 2049; it is allowed to a surety, *Id.* 1936; to an agent, *Id.* 2994; on dower, *Id.* 2326, 53; on the price of land, the sale of which is rescinded, 1864, 72, 2570, 8; on loans on mortgage, without an endorser, acts of 1820, 93; on protested notes, acts of 1821, 44; in certain cases on *debts* due by a succession, *Code of Practice* 988; on a balance due by an executor or curator, *Id.* 1007.

The present case has been assimilated to that of a partner employing partnership money in his private affairs. It is but the converse of it.

Lastly, the state has complained that the board retains too large a sum as a surplus to meet accidents and contingencies. The sum thus reserved is four hundred and forty-six thousand dollars. Witnesses have been heard, some of whom think this reservation too considerable, while others think otherwise. The district judge has concluded that the board ought to divide a part of this surplus among the stockholders, and has fixed the part of which he thinks ought to be divided at one hundred thousand dollars, and has decreed a division accordingly.

The charter has given the management of the affairs of the
bank to the board of directors, and has expressly made it the
judge of that portion of the profits, which it is advisable from
time to time, to divide among the stockholders; a very strong
case should indeed be made to justify a court in any interfe-
rence with the management of these affairs, and to substitute
its own judgment to that of the board, on the *quantum* of the
profits which it is proper to divide. If the board honestly
err in these matters, we are not ready to say the courts pos-
sess the power to rectify its mistakes.

The board of
directors of a
bank is invested
with discretiona-
ry power of judg-
ing what portion
of the profits it is
advisable from
time to time to
divide among the
stockholders.

While no improper motive, no partiality is suggested, the
remedy may be left to be applied by the stockholders, who
at each annual election, have it in their power to change
their agents.

A very strong
case must be made
of justice to inter-
fere with the dis-
cretion of the di-
rectors in relation
to the *quantum* of
profits of the bank
which they are to
divide.

The district judge informs us, that the bank of the United
States retains a surplus fund of three millions, which is some-
thing less than one-tenth part of its capital. The bank of
Louisiana it appears retains a little more than that in pro-
portion to its capital. The difference may well be accounted
for by the difference which exists between the customers of
these two institutions. That of the first are all mercantile
men; one half of those of the other are agriculturists. The
one acts on notes at sixty, ninety and one hundred and
twenty days at most; while a great proportion of the funds of
the other, are lent on mortgages and paid by small annual
instalments. These circumstances render the call for relief
on customers much more precarious in the bank of Louisiana.

If the directors
honestly err in
exercising their
discretion in man-
aging the funds
of a bank, it is not
clear that courts
possess the power
to correct their
mistakes.

It is ordered, adjudged and decreed, that the judgment of
the District Court be annulled, avoided and reversed, and
proceeding to give such a judgment as in our opinion ought
to have been given below; it is ordered, adjudged and
decreed, that the sum of three hundred thousand nine hun-
dred and thirty-one dollars, being the share of the state in the
profits made on the sale of the bonds, be on the 1st July
next, the day of the maturity of the bonds of the first series,
be applied by the bank to the redemption of the said bonds,
or be paid over to the commissioners of the sinking fund, to
be by them so applied; and that the bank pay costs.