OVERTON, J.
 

 Plaintiff and defendants are the owners of lots, in the city of New Oideans, lying adjacent to each other. There was a garage, which was in part one story and in part two stories, constructed upon what is now defendants’ lot, by the original owner of both lots. This garage was supported on the side towards plaintiff’s lot by a brick wall, claimed by plaintiff. Defendants demolished
 
 *641
 
 the garage in 1926, and constructed in its place a two story building. In this construction, they made use of the wall, claimed by plaintiff, as if it were a party wall, and also utilized four inches and one line of land, claimed by plaintiff, extending 'beyond the wall.
 

 The purpose of this suit is to obtain judgment recognizing plaintiff to be the owner of the wall and of nine inches of the land on which one-half of the wall rests, and of four inches and one line of the land, abutting the wall, or, in the alternative, to obtain judgment for the value of one-half the wall, and for the value of the nine inches of land on which the wall rests, and of the four inches and one line, abutting the wall. Plaintiff claims for the value of one-half of the wall, $2,198.04; for the value of one-half of the strip of eighteen inches in width, on > which the wall rests, $900; and for the value of the four inches and one line of land, abutting the wall, $400 — making a total of $3,-498.04.
 

 The trial court rendered judgment for plaintiff, recognizing him as the owner of . the land, sued for, and as the owner of the wall,' but gave defendants the right to make the nine inches of land on which one-half of the wall rests and the four inches and one line of land, abutting it, theirs, or, in other words, to make the wall a party wall, on paying plaintiff the sum of $3,281.37 within sixty days from the finality of the judgment, with 5 per centum per annum interest thereon from judicial demand, namely, February 15, 1928, until paid.
 

 The lots of plaintiff and defendants front on Baronne street, in the square bounded by Girod, Julia, and Oarondelet streets. Plaintiff purchased his property from Leopold Weil, on June 8, 1923. The description of the property, as described in the act of sale, is as follows:
 

 “A certain piece or portion of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages, and with all prescriptions thereunto belonging or in anywise appertaining, situated in the First District of the City of New Orleans, in square 234, bounded by Baronne, Girod, Oarondelet and Julia streets, designated by the letter ‘X’ on a sketch and survey made by Adloe Orr, civil engineer, dated July 14, 1920, a blue print whereof is annexed to an act of sale before Frank W. Hart, notary public, dated July 20, 1920, being a sale of another portion of the larger property, from Isidore Singer to Nicholas It. Greco. And according to said sketch, said piece or portion of ground forms the corner of Baronne and Girod streets, and measures twenty-eight feet and six lines front on Baronne street, the same width in the rear, by a depth between equal and parallel lines, and front on Girod street of ninety-seven feet, nine inches.”
 

 Defendants purchased their property from Nicholas B. Greco on July 9, 1926. The property conveyed is described as follows:
 

 ‘‘A certain lot of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging, or in anywise appertaining, situated in the first district of this city, in square No.. 234, bounded by Oarondelefte, Baronne, Julia and Girod streets, designated by the letter ‘Y’ on a sketch of Adloe Orr, civil engineer, dated July 14, 1920, according to a blue print an
 
 *643
 
 nexed to an act before E. W. I-Iart, notary public, dated July 20, 1920, according to which said portion of ground commences at a distance of twenty-eight feet, eleven inches and six lines from Girod street, and measures ninety-eight feet, ten inches and six lines front on Baronne street, by a depth on the line nearest to and parallel with Julia street of one hundred, twenty-seven feet, ten inches and five lines; thence a first width in the rear line parallel with Baronne street and running towards Girod street twenty-five feet, thence thirty feet, one inch and five lines on the line parallel with Girod street, and running towards Baronne street; thence a second width of seventy-three feet, ten inches and six lines on a parallel with Baronne street and running towards Girod street, and ninety-seven feet, nine inches deep on the line nearest to and parallel with Girod street on the line of lot ‘X’ on said plan.”
 

 Plaintiff’s property and defendants’ property were under common ownerships from 1905 to 1920. The first common owner during that period was the Equitable Real Estate Company, Limited. That company erected on the property, on what is now lot “X,” owned by plaintiff, a three-story brick building, to which’ has since been added another story, arid erected a garage on the lot, now designated as' “Y,” owned by defendants, the designations ■ “X” and “Y” being, according to the Orr plat, made some years later. This •garage was a one-story building, except a comparatively small part of the front portion of it, which was two stories. The trusses, supporting the roof of the garage, rested on brick pilasters,- built against the Julia street side of the wall, and -dovetailed into it, of what is now plaintiff’s' building.
 

 Isidore Singer was the last common owner of the property. He held through several intermediate conveyances. He sold what is designated as lot “Y” of the Orr plat to defendant’s author in title, Nicholas R. Greco, on July 20, 1920, under substantially the same description as that contained in the deed by Greco to defendants, and shown above, and on November 8, 1920, under virtually the same description as set forth in the deed by Weill to plaintiff, and shown above, Singer sold lqt X of the Orr plan to plaintiff’s author in title, Leopold Weill.
 

 Immediately after acquiring lot Y of the Orr plan, defendants demolished the garage on that lot, and began the construction thereon of their two-story ¡brick building. In this construction, they destroyed the pilasters that supported the roof of the garage. A number of holes were made in the wall of plaintiff’s building and two heavy steel beams and a number of joists, supporting the floor of the second story of the new building, were placed in these holes. The roof of the garage was elevated so as to constitute it the roof of the new building; the roof, after its elevation, being still supported by the wall of plaintiff’s building. Other phases of this litigation were before this court in State ex rel. Hurwitz v. Recorder of Mortgages, 165 La. 334, 115 So. 582; Hurwitz v. Lotz, 172 La. 27, 133 So. 351.
 

 We shall consider first plaintiff’s asserted title to the four inches and one line of land abutting the wall, as the wall stands above the ground, on the side of the property, abutting defendants’ property. Defendants’ author in title was the first to purchase from the common owner of both properties. Defendants purchased the lot designated as “Y”
 
 *645
 
 on a sketch and survey made by Adloe Orr, civil engineer, dated July 14, 1920, with indication as to where the sketch may be found. Plaintiff purchased, several months later, the lot designated as “X” on the same sketch, and with the same indication as to where the sketch may be found. In defendants’ deed, after describing the property sold by the designation on the sketch, it is recited that lot Y, according to the sketch, commences at a distance of twenty-eight feet, eleven inches, and six lines from Girod street, which is the width of plaintiff’s lot, as claimed by plaintiff, and as is shown by the measurement stated on the sketch, and then follows what purports to be, according to the sketch, recitals of the measurements of the several boundary lines of lot Y. In plaintiff's deed, after describing the property sold by the designation on the sketch as lot “X,” the same course is pursued, in giving, with reference to the sketch, the measurements thereon shown of the four boundary lines.
 

 With these measurements, as given on the sketch, the amount of property, in the area covered by both lots, before the making of the Orr sketch, may be ascertained, but not the amount of property in either lot, if the boundary line between lots X and Y, as located on the sketch, is to govern. To give plaintiff twenty-eight feet, eleven inches, and six lines width would require that its line extend four inches and one line beyond the wall on the Julia street side of its property. The result of so placing the line would be to make the garage, standing when the property was sold, as well as the present building, erected in its place, rest upon four inches and one line of plaintiff’s land.
 

 In our opinion, it is not, as urged by plaintiff, the measurements, recited in the deed that are controlling in locating the boundary line between the two properties, but the boundary line as located and shown on the sketch, according to which the property was sold. Where a lot is sold, designated by a number or a letter, in a particular square, according to a plan, although the number of feet contained in it is specified, the reference to the plan and the boundaries of the streets should control the measurements of the lot. Kirkpatrick v. McMillen, 14 La. 497; Buisson v. McNeil, 9 La. Ann. 445; Wurzburger v. Meric, 20 La. Ann. 415; Whitney v. Saloy, 26 La. Ann. 40; Gray v. Coco, 113 La. 33, 36 So. 878.
 

 Where there is a difference in measurement between the boundaries of the lot, as located on the sketch, and as recited in the deed- and sketch, the lot being sold by a designation, shown on the sketch, the boundaries, as located on the sketch, should govern and control the measurements given, and all the more is this so where, as is the case here, the crucial boundary is located along and against a monument, such as a brick wall, indicated, though not styled a wall, on the sketch.
 

 Reference to the plat shows that the boundary line between X and Y is along and against what is evidently a construction of some kind, which, in fact, is the wall of plaintiff’s building. The location of the line there by the common owner of both properties, it may be observed, has the effect of avoiding the peculiar situation that would arise from the owner of both properties selling one with a building on it, resting four inches'and one line on the other property, which other property he evidently intended
 
 *647
 
 to and did sell. Our conclusion is tliat plaintiff lias no title to tlie four inches and one line of land, claimed by him, and extending beyond the wall.
 

 The effect of this ruling is also to recognize plaintiff as the owner of the land upon which the wall, excluding that part of its foundation, extending beyond the boundary indicated, rests. As| the land on which the wall, proper, rests was not conveyed to defendants by their deed, but was conveyed to plaintiff by his deed, it follows that the wall, as a part of the land, or as an improvement attached to it, was also conveyed to plaintiff, and that plaintiff is the owner of the wall. Such being the case, the wall is not a party wall. Murrell v. Fowler, 3 La. Ann. 165.
 

 Of course, that part of the foundation of the wall that extends across a part of defendants’ property, the extension, it may be said, being underground, is a part of the wall, as are also the pilasters, these being necessary, or at- least advisable, to support the wall, when it was constructed. The fact that a part .of the foundation and the pilasters are on defendants’ property does not give defendants any interest in the wall. They wére there when defendants purchased, and likewise when plaintiff purchased; they having been placed there by a common owner of both properties. Defendants acquired no interest in the wall by these circumstances. Murrell v. Fowler, supra.
 

 The sole right that defendants acquired with reference to the wall was the servitude arising from the destination due páre de famille, or what is otherwise termed the “destination” of the proprietor of both properties. This destination gave defendants a right of servitude on the wall for the purpose of supporting the garage, and for supplying to it a side wall. Civ. Code, arts. 767, 768, 769. This servitude existed as long as the garage existed, but when defendants demolished the garage and put the wall to a more burdensome use, the servitude arising from the destination of the common proprietor expired, and defendants were left without a servitude. Laurent, in his commentaries on the Code Napoleon, vol. 8, p. 289, in speaking of the difference between servitudes by title and those by destination, says:
 

 “The destination, on the contrary, rests upon the tacit will of the parties. This will is necessarily limited to the situation which exists at the time of the separation of the properties; it is this situation which should be maintained. From this it follows that the servitude is restricted to the use to which the páre de famille (father of the'family, or common proprietor) had destined one of the properties; if he has established one window it will be maintained by a title of servitude, but a second one cannot be opened because the parties wish to maintain only that which exists. This is all that can be inferred from their silence; in going further there would be a risk of exceeding their intentions.” See, also, Planiol et Ripert, vol. 3, p. 908; Baudry-Lacantinerie, vol. 5, p. 849.
 

 In Capo v. Blanchard, 1 La. App. 3, 8, it was held, in effect, that a servitude, arising by destination, expired when the building, ■which gave rise to it, ceased to exist.
 

 Under these authorities, our conclusion is that, when defendants tore the garage down, and erected in its place a two-story building, they not only placed heavier and more extensive burdens on the wall than did the orig
 
 *649
 
 inal proprietor of both properties, blit, by their action, abandoned and destroyed the limited servitude by destination, imposed by the original proprietor.
 

 In these circumstances defendants are without any interest in the wall. They, however, may acquire, as recognized by plaintiff, an interest in it, for article 684 of the Civil Code provides that:
 

 “Every proprietor adjoining a wall has, in like manner, the right of making it a wall in common, in whole or in part, by reimbursing to the owner of the wall one-half of its value, or the half of the part which he wishes to hold in common, and one-half of the value of the soil upon which the wall is built, if the person who has built the wall has laid the foundation entirely upon his own estate.”
 

 The closing provision of this article was recognized as an obvious mistranslation of the French text of the article, intended to be reproduced in English, in the Code of 1825, where it is article 680, in Heine v. Merrick, 41 La. Ann. 195, 204, 205, 5 So. 760, 6 So. 637, and was adverted to as such in Murrell v. Fowler, 3 La. Ann. 166. The closing part of article 680 of the French text in the Code of 1825 (article 684 of the Code of 1870) reads, “si celui qui a fait le mur l’a fait porter entierement sur son heritage,” which translated is, “if he who has built the wall has caused it to rest entirely on his own estate.” The condition of the article is satisfied, if the base of the wall at the ground'level is located entirely on one property. Murrell v. Fowler, supra.
 

 We now reach the question: Should defendants elect to make the wall a party wall, or rather so much of it as they have used, how much should they pay plaintiff? The wall, at the base, where it reaches the ground, is eighteen inches thick. Therefore the wall may be said to rest on eighteen inches of plaintiff’s land. Defendants must pay therefore for nine inches of this land. A reasonable value for the land at the time the wall was made use of for defendants’ new building is $1,000 a front foot, which apparently was the value placed on it by the trial court. This would entitle plaintiff to $749.97 for the nine inches of land. The wall was in good condition, when it was made use of. It had been there only about twenty years, and was practically as good for its purpose, we take it, as a new wall. A reasonable value for one-half of this wall, up to the height it has been utilized for the two-story building, is $2,-198.04, which, we take it, is the amount allowed by the trial court. The sum of these two items—the only ones for which plaintiff is entitled to payment—is $2,948.01.
 

 In his answer to the appeal, plaintiff has asked that the foregoing sum bear interest at 5 per centum per annum from October 1, 1926, instead of, as allowed by the trial court, from judicial demand, which was February 15, 1928, until paid. In our opinion, plaintiff is entitled to the amendment. The record makes it certain that on October 1, 1926, defendants had taken possession of the wall as a party wall. The moment they took possession of it as such, they owed plaintiff one-half of its value, up to the extent utilized. Should they now elect to make it a party wall, which they have practically done, the election should relate back to the date when they took possession, which is the date the indebtedness became due and demandable.
 

 
 *651
 
 It may be said bere that plaintiff failed to pray for interest — an oversight which he apparently failed to notice until after the case had been tried and submitted for decision. Before the court rendered judgment, plaintiff was allowed to file, over defendants’ objection, an amended petition, praying for legal interest. The amendment, though quite tardy, did not come too late. It did not require the introduction of further evidence. The record already showed when defendant took possession of the wall, and therefore when the indebtedness became due. The only purpose of the amendment was to overcome the presumption that defendant had remitted the interest by his failure to pray for it. Amendments should be allowed, even after issue joined, when they tend to the furtherance of justice, and do not retard the case. Tremont Lumber Co. v. May, 143 La. 389, 413, 78 So. 650.
 

 We have not overlooked the fact that defendants have filed a plea of ten years’ prescription, aequirendi causa, and a plea of estoppel.
 

 The plea of prescription, which was filed in support of defendants’ right to use the wall without paying therefor, has no foundation upon which to rest. It suffices to point out that ten years have not elapsed since the owner of both properties parted with the two lots. To obtain the required possession, if the prescription is otherwise applicable, would make it requisite that the prescription run at the same time in favor of and against each of the preceding owners of both lots, or at least some of them — a position which, from a legal standpoint, it is impossible to sustain, for a person cannot prescribe against himself.
 

 As to the plea of estoppel, that plea rests upon the ground that plaintiff, having made a claim by way of affidavit, and caused it to be recorded in the mortgage record as a lien against defendants’ property, instead of enjoining defendants from taking possession of the wall as a party wall, is now estopped to claim the ownership of the wall and to demand the removal of the construction.
 

 We do not attach much importance to the plea of estoppel, since defendants will have the right to make the wall a party wall, to the extent it is used, by reimbursing defendants, and, apparently, defendants consider the plea to be of subordinate importance. Nevertheless, to consider the plea, plaintiff was unsuccessful in his efforts to secure his rights by the recordation of the affidavit. State ex rel. Hurwitz v. Lotz, 165 La. 334, 115 So. 582. There is no reason to think that defendants were misled, or injured, in any way, by those efforts. It is true plaintiff might have enjoined defendants from taking possession without first paying him, but it is equally true that defendants were notified of plaintiff’s 'position by these efforts to secure his rights. No ground is shown for an estoppel. The case of Pokorny v. Pratt, 110 La. 609, 34 So. 706, cited by defendants, is easily distinguishable from this case on the facts.
 

 We conclude that the judgment of the trial court should be amended so as not to charge defendants with the value of the four inches and one line of land abutting the wall on defendants’ side of the property, or to recognize plaintiff as the owner of that land, and so as to make the interest run from October 1, 1926.
 

 Eor these reasons, the judgment is amended by rejecting plaintiff’s demand for recogni
 
 *653
 
 tion of ownership of the four inches and one line of land, abutting said wall on defendants’ side of the property, and hy reducing the amount defendants will have to pay plaintiff, within said sixty days from' the finality of this judgment, to make the wall a party wall, from $3,281.37 to $2,948.01, and so as to make the interest thereon, at 5 per centum per annum, run from October 1, 1926, instead of February 15, 1928, and as thus amended the judgment is affirmed; the costs of the appeal to be paid by plaintiff.