18 So.2d 511

**PEASE et al. v. GATTI.**

No. 37273.

April 17, 1944.

Rehearing Denied May 22, 1944.

C. B. Prothro, of Shreveport, for defendant-appellant.

J. Bennett Johnston and Albert P. Garland, both of Shreveport, for plaintiffs-appellees.

HAMITER, Justice.

At a sheriff's sale on July 25, 1931, held in connection with foreclosure proceedings based on a second mortgage note of $700 given by G. Frank Pease and owned by the Shreveport National Farm Loan Association, one I. F. Cryer bid in and purchased a 1,118 acre tract of land located in Bossier Parish, Louisiana, and which belonged to the said Pease.

On the same day and pursuant to a written agreement into which he had previously entered with defendant Hal M. Gatti, who was the Secretary-Treasurer of the named Association, Cryer delivered to Gatti personally a $3,000 promissory note that he (Cryer) owned, it being signed by one P. T. Rennick and secured by a first mortgage on some lots and improvements in Simms Subdivision of Bossier Parish. Also, he assumed the unpaid balance of a first mortgage held by the Federal Land Bank on the 1,118 acre tract, and he executed a second mortgage on that property in favor of the Shreveport National Farm Loan Association.

Following the death of G. Frank Pease, his widow and three children brought this suit against Gatti to recover the sum of $3,000, they alleging that defendant manipulated the foreclosure sale to the benefit of himself and to the detriment of Pease for that amount.

The district court ordered Gatti to render to plaintiff an accounting regarding the $3,000 Rennick mortgage note that he received from Cryer. On Gatti's appeal to this court the judgment was affirmed. We held, as did the trial judge, that there had been a manipulation of the sale, by which a duty and an obligation owed by Gatti to Pease had been breached, and that Gatti had enriched himself at the expense of Pease to the extent of the value of the $3,000 note. 202 La. 698, 12 So.2d 684.

In compliance with that judgment Gatti filed in the district court an account, valuing the $3,000 note as of July 25, 1931, at $1,000, and listing various items of cost and expenses. To this plaintiffs tendered a pleading styled "Traverse of Accounting".

Thereafter the court, following a consideration of the evidence respecting the issues created by the account and the traverse, ordered defendant to pay to plaintiffs the sum of $1836.60, with legal interest thereon at the rate of 5% per annum from July 25, 1931, until paid and all costs of the suit.

From this judgment defendant is now appealing. Plaintiffs have not answered the appeal.

The record does not disclose the trial judge's computation relative to the sum found to be due of $1836.60. However, in the brief of counsel for plaintiffs it is said: "The lower court held that the $3,000 mortgage note, which had been wrongfully received and retained by defendant on July 25, 1931, was worth, on that date, the sum of $2500. The Court allowed the following claims of defendant, as set forth in his accounting, to-wit: Sheriff's costs, $51.25; Clerk's costs, $11.15; advertising, $7; deed, $2; R. H. Lee, attorney, $30; Clerk's fee, $10; Flenniken, brokerage fee, $500; and W. H. Cook, attorney, $50, making a total of $663.40."

But irrespective of the information thus furnished us, it is our opinion, based on the evidence in the record, that the note had a value as of the stated date of at least $2500.

Ordinarily in determining the worth of first mortgage paper, two elements are taken into consideration: 1—The financial responsibility of the maker and of the

endorsers, if any, thereof; and 2—the value of the property mortgaged to secure the payment of the note. Here we are permitted to consider only the second element, for no satisfactory evidence was offered as to the first.

A prominent realtor of Shreveport, testifying as an expert for plaintiff, opined that the land and improvements thereon had a value of $3,500 in July, 1931. Tending to corroborate this estimate is the proven fact that Cryer, in a sale to Rennick in 1929, received as a consideration for the property not only the $3,000 note in question but also a cafe; and for this cafe, in selling it approximately six months later, Cryer was paid $600 in cash.

On the other hand the experts offered by defendant, who were of equal reputation and prominence as plaintiffs', testified to values of $1,750 and $2,000. But these, we believe, are slightly inadequate, particularly in view of the following circumstances. The land has a frontage of 120' on one of the State's main paved highways, is 297' in depth, and is located near Bossier City and Shreveport. In the construction of the dwelling thereon in 1928, Cryer, according to his own testimony, expended approximately $1,000, and he himself performed the greater part of the necessary labor. Additionally he erected on the land a combination garage and store building.

After weighing the testimony of the several experts and giving due consideration to the circumstances above pointed out, we conclude that a value of $2,500 for the property, and consequently for the

note, is proper. From this amount, defendant is entitled to deduct those items of expense, and only those, which were incidental to the foreclosure proceeding, a total of $663.40. Thus there is due and owing by defendant to plaintiffs the sum of $1836.60.

Next it is urged by appellant that the district court erred in awarding legal interest on the claim from July 25, 1931, he contending that it should have been allowed either from judicial demand or from the date of the judgment rendered on the accounting.

In the case of Friede v. Myles Salt Company, Limited, 177 So. 105, 108, the Court of Appeal of the Orleans Circuit considered a question very similar to the one here presented, and it appropriately and correctly observed that:

"We note that prior to 1839, interest was not allowed on accounts or unliquidated claims. Until that time, article 554 of the Code of Practice of 1825 provided that: 'No interest shall be allowed on accounts or unliquidated claims.' We deem it significant that by Act No. 53 of 1839 that provision was repealed. Now, apparently as a result of Act No. 181 of 1852, the article reads as follows: 'Interest at the rate of five per cent. shall be allowed on all debts from the time they become due, unless otherwise stipulated.'

"The Civil Code provision on the subject has sustained a similarly significant alteration. Article 1932 of the Code of 1825 provided that: 'In contracts, which do not stipulate for the payment of interest, it is due from the time the debtor is put in de-

fault for the payment of the principal, and is to be calculated on whatsoever sum shall be found by the judgment to have been due at the time of the default.'

"However, that article (1932) of the former Code has now become article 1938 of our present Civil Code, which reads as follows: 'All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated.'

"It is obvious that both changes indicate an intention that interest shall be allowed on unliquidated, as well as on liquidated, claims, and that interest shall commence to run at the time the debt becomes due, regardless of putting in default.

"Act No. 206 of 1916, providing 'that legal interest shall, hereafter, attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto"' has no application, for, by its own terms, it controls only '* * * judgments, sounding in damages "ex delicto".'"

▇ Under this interpretation of the mentioned provisions of our present Civil Code and Code of Practice (Articles 1938 and 554 respectively), it must be held that legal interest on plaintiffs' claim commenced to run on July 25, 1931, the date when defendant received the $3,000 promissory note that rightfully belonged to Pease. This conclusion is further supported by Lotz v. Hurwitz et al., 174 La. 638, 141 So. 83, in which we held that the sum defendants were required to pay to make a wall on plaintiff's property a party wall should bear interest from date defendants took possession of it, this being the

time when the indebtedness became due and demandable.

The authorities cited and relied on by defense counsel are inappropriate. Bertrand v. Frazier, 11 La. 236, was decided in June, 1837, before the adoption of our present codal provisions. Crichton et al. v. Standard Oil Company of Louisiana, 178 La. 57, 150 So. 668, in which it was incorrectly said that interest on unliquidated claims could not be allowed except from judicial demand, was erroneously predicated on State v. Bank of Louisiana, 6 La. 745, decided in June, 1834, long prior to the effective date of the aforementioned statutory change.

The judgment is correct and it is affirmed with costs.

ODOM, J., absent.