J. M. Butchert *v.* Samuel Ricker, Jr.

J. M. Bach, Appellant.—Mrs. S. Lakin, Appellee.

Where the purchaser took a rule on the prior mortgage creditors to release mortgages and distribute the purchase money, the latter may insist on their mortgage rights and subject the property to the payment of their debts.

Matters properly triable in a hypothecary action, should, after the parties have gone to trial, be determined by the court, on a rule, where the form of proceeding had not been objected to at the proper time.

An attachment will issue in favor of a vendee against the property of a non-resident vendor, to secure a claim in warranty.

Where counsel for a married woman admitted in his brief that the person who filed an answer on her behalf, was her accredited agent, " with the full authorization and consent of her husband," the court will presume that the proceedings against the wife were fully authorized by the husband.

The exhibition of a certificate of mortgages, or the attaching of the same to an act of sale, does not relieve vendor from an express warranty of " all mortgages and incumbrances."

APPEAL from the District Court of the parish of Jefferson, *Burthe*, J. *Purvis & Dugué*, for appellant. *Van Dalson*, for appellee. *Stansbury*, for *Pearson*.

Merrick, C. J. *John M. Bach*, the plaintiff in, the rule taken in this case, on the twenty-second day of April, 1853, bought of *Mrs. Celeste Eliza Ricker*, wife of *John Solomon Lakin*, of the city of ·Cincinnati, two squares of ground containing forty-six lots, in Rickerville, a few miles above this city, for the price of $7,363.

*Mrs. Lakin*, who is the daughter of *Samuel Ricker*, *Jr.*, on the 22d of June, 1852, purchased those lots at a Sheriff's sale, made upon two executions issued by a Justice of the Peace, at the suit of *J. M. Butchert*, for work done upon banquettes in front of certain of these lots. The judgment being by confession and for $36 45, in one case, and $46 48, in the other, and purporting to give a privilege on each square respectively.

At the time of the sale, the property of *Ricker* was encumbered with mortgages to a large amount, and there can be but little doubt that this proceeding was resorted to for the purpose of extricating a part of it from the power of the mortgage creditors; for it appears that the sale of almost any one of the lots would have paid the judgment before the Justice of the Peace. *Mrs. Lakin* became the purchaser at the sum of $1800, which after paying the two judgments under which the property was sold, left, by the terms of the adjudication, in her hands, for the mortgage creditors, $1,653 32.

*J. M. Bach* having, in the act of sale, assumed to pay this sum to the mortgage creditors, and, it seems, afterwards apprehending-that they might endanger his title to the whole property bought, if the matter was suffered to remain in that condition, took a rule in the District Court upon the mortgage creditors to show cause why their mortgages should not be cancelled upon this property, upon his depositing in court the $1663 32 above referred to.

*J. H. Pearson*, being one of the mortgage creditors cited to show cause, and holding a judicial mortgage for $32,162 92, filed an answer to the rule, wherein he set forth, among other things, that *Butchert* had no privilege upon the two squares of ground, and that the judgment could not create or recognize a

62

BUTCHERT
v.
RICKER.

privilege, and that the privilege, if it existed, only affected the lots in front of which the work was done and did not affect the whole square; that the pretended sale to *Mrs. Lakin* was collusive and contrived by *Ricker* to defeat the defendent ; and he concluded, by praying that his mortgage be recognized as existing and unimpaired upon said two squares of ground in the hands of said *John M. Bach*, and praying that the mortgage property be seized and sold to pay the debt.

Thereupon, *John M. Bach*, the plaintiff in the rule, filed what he designates as a supplemental petition, and sued out a writ of attachment against his vendor, on account of the threatened eviction, and cited her, through her agent, in warranty.

This attachment having been set aside, a second attachment was moved. To obtain these attachments, he sets forth his proceedings in the rule and the reconventional demand of *Pearson*, and prays for judgment against *Mrs. Lakin*, and propounds interrogatories to her agent, *John Calhoun*, as garnishee.

*Calhoun*, the garnishee answered, that he had in his hands $6,120 of *Mrs. Lakin's* money.

To this demand in warranty, *Mrs. Lakin*, by counsel, answers the rule and the pleadings of *John H. Pearson*, by a general denial, and she avers that her warranty to *Bach* only extended to such mortgages as were not mentioned in the certificate of mortgage annexed to the act of sale. She alleges that *Pearson* obtained his judgment against *Ricker* by collusion, and that the same being by confession, is not binding on her. She further alleges, that she is a mortgage creditor of the said *Samuel Ricker*, and that her credit is of a date anterior to that of *Pearson*, and that it has never been cancelled. She then assumes the character of plaintiff in reconvention against *Pearson*, and prays that he be cited to appear and answer her petition; that his petition be dismissed, and should he establish his mortgage against *John M. Bach*, that then her mortgage on the property be recognized against *Pearson*, and she have judgment against him for $750, and six per cent. interest, and that her mortgage be recognized on all the other real estate belonging to *Samuel Ricker*, Jr.

*John H. Pearson*, after service of *Mrs. Lakin's* reconventional demand on his attorney, comes into court and excepts to the same on the following grounds :

1st. That she is a married woman and not authorized by her husband.

2d. That she sets up no cause of action against him.

3d. That her claim as a mortgage creditor is inconsistent with that of owner.

4th. That she does not set forth the ground of her claim against her father, *S. Ricker*, Jr.

5th. That her demand contains no allegation under which *John H. Pearson* can be called upon to prove his judgment.

Subsequently, *Pearson* filed his answer to the merits. He denied generally all of her allegations. He denied that *Mrs. Lakin* was a creditor of her father, and alleged that her pretended mortgage was placed there to baffle the creditors; that he, *Samuel Ricker, Jr.*, was not indebted to his children, but that the mortgages in their favor are fictitious and void; that in a suit wherein *Mrs. Lakin*, and her husband and her father were parties, and he, said *Pearson*, defendant, said mortgage now set up by *Mrs. Lakin*, were decreed to be fictitious and void; he plead said judgment as a peremptory exception in bar of *Mrs. Lakin's* claim. He further pleaded, that his judgment is real, and

that it was so adjudged in the same judgment, and precludes *Mrs. Larkin* from again questioning the same.

So far the parties seem to have acquiesced in these irregular proceedings, and with the exception of the objections of *Pearson* to *Mrs. Lakin's* demand, they have confined themselves to allegations upon the merits.

At this stage of the controversy, *Mrs. Lakin* filed what she calls a peremptory exception, wherein she alleges that *Pearson's* action can only, as a hypothecary action, be brought directly against *Bach* as third possessor, and that " *Pearson* cannot stand in court in consummation of his alleged claim, without first having given thirty-days notice to the third possessor of the property sought here to be made responsible, before commencing suit for the recovery thereof, which he has failed to do."

. The parties thus having brought the proceedings to an issue, *Mrs. Lakin* and *Pearson* entered into an agreement, that either party might, on the trial, offer the part of any judicial record in evidence. · Under this rule, the parties went to trial, and after they had, by their industry, made a voluminous record and submitted their case to the Judge, he dismissed the proceedings on account of their irregularity, and condemned *Bach* to pay the costs. From this judgment he has appealed.

*Bach* demands that the decision of the lower court should be reversed, and that the mortgages against this property be cancelled, or that he have judgment against his vendor for $6,900, and that the attachment be sustained.

*J. H. Pearson* appeared in this court and filed an answer, praying that the judgment of the lower court might be amended in his favor.

The counsel for *Mrs. Lakin* admits, in his brief, that *John Calhoun, Esq.*, who it appears filed the answer of *Mrs. Lakin* at the time of the filing the affidavit for an attachment, " was and yet remains the most perfectly accredited agent and attorney in fact of *Mrs. Lakin*, with the full authority and consent of her husband." We, therefore, conclude that the proceedings in this case on the part of *Mrs. Lakin*, were fully authorized by her husband. We should, therefore, give them such effect as they are entitled upon this supposition, and we will proceed to consider the objections raised by her counsel as far as we are able to gather them from the brief, though not in the order there treated.

I. It is objected that neither *Bach* nor *Pearson* had the right " further to discuss the rights to real property in the form of their present proceedings, which is simply a rule to erase mortgages in which *Pearson* and *Bach* were attempting to aim at a judgment upon matters that clearly can only be discussed in a *real action* of the hypothecary form." The Judge of the lower court seems also to have been of this opinion, inasmuch as he dismissed the proceedings.

The proceedings in this case are certainly very irregular, and had they been excepted to in time, such exception would have occasioned the dismissal of the rule. But the exceptions of *Mrs. Lakin* were not filed until after the cause had been at issue on its merits. Even then she did not require the Judge to pass upon her exceptions, but proceeded to the trial on the merits. Moreover *Mrs. Lakin* was not the third possessor. Without questioning the right of the court on its own motion, to dismiss proceedings for great irregularity, yet we think, after the parties had gone to trial and he had heard the testimony, he should have passed upon their pretensions, as the substance of their respective

BUTCHERT
v
RICKER.

claims and rights were set forth in the pleadings, perhaps as fully as they could have been presented in a formal petition.

II. She denies that *Bach* has any claim in warranty against her, as the mortgage of *J. H. Pearson* was mentioned in the certificate of mortgages, made a part of the act of sale to *Bach.*

We do not understand that the exhibition of a certificate of mortgages or the attaching the same to an act of sale, relieves the vendor from her express warranty against all mortgages and incumbrances. It might be the very reason why the third warranty was required.

III. *Mrs. Lakin* has not urged in this court, as we understand, any objections to the proceeding by attachment. We, therefore, proceed to consider the last objection urged by *Mrs. Lakin*, which is, that *Pearson* did not appeal, and therefore he cannot demand a change of the judgment in his favor. To this, it is satisfactorily replied that *Bach* appealed, and that *Pearson*, as appellee, by the prayer in his answer, has a right to have the judgment corrected as against *Bach.*

As between the parties to this proceeding, *Pearson* has most clearly shown the reality of his mortgage, and, moreover, that the pretended mortgages of *Mrs. Lakin* have been decreed to be fictitious and void.

We furthermore think that the proceedings instituted before the Justice of the Peace, were designed to defeat the mortgage creditors, and that no prudent person, in view of the trifling amount of the judgment, and the great number of lots put up to be sold under them, with the long list of mortgages exhibited, could have formed any other conclusion. We are therefore of the opinion, that whether there was a privilege upon the lots in favor of *Butchert* or not, the proceeding cannot be permitted to prejudice the mortgage creditors.

We understand from the pleadings, that in the event the mortgage of *Pearson* is recognized, that *Bach* abandons the property to his mortgage creditor. C. C. 3363.

It is therefore ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed; and proceeding to pronounce the judgment which ought to have been rendered by the lower court, it is ordered, adjudged and decreed by the court, that the judicial mortgage in favor of *John H. Pearson*, upon the said squares of ground numbered six and eleven, in said Rickerville, in the parish of Jefferson, be recognized for the sum of thirty-two thousand one hundred and fifty-two dollars and ninety-two cents, with five per cent. interest thereon per annum, from the third day of June, A. D., 1847, until paid. And it is further ordered, that said squares of ground be seized and sold to pay said judicial mortgage and interest thereon. And it is further ordered, adjudged and decreed, by the court, that the said *John M. Bach*, on his demand in warranty, do recover and have judgment against the said *Mrs. Celeste Eliza Ricker*, wife of *John S. Lakin*, for the sum of five thousand seven hundred and nine dollars and forty-three cents, with five per cent. interest thereon, from the twenty-sixth day of February, A. D. 1855, until paid.

And the said *John Calhoun*, garnishee, is ordered to pay to said *Bach*, all or so much of said sum of six thousand one hundred and twenty-dollars in his hands, as may be sufficient to pay said sum of $5,709 43 and interest, and so much of the costs in this case as the said *Mrs. C. E. Lakin* may be decreed to pay.

And it is further ordered, that the costs of this appeal be equally borne by the said *John M. Bach* and said *Mrs. C. E. Lakin*, and that the costs of the lower court be paid by the said *Mrs. C. E. Lakin*.