## No. 9775.

### SUCCESSION OF M. H. APPLEGATE.

The widow of a deceased party by second marriage will not be allowed to claim, as administratrix, either in her own right, or on behalf of creditors, money expended by the husband for the maintenance and education of his children by a first marriage, when it appears that he made no such charge when living, and had never intended to make it; that the first community was solvent, that he was solvent during the existence of the second community, and at the moment of his death, and that the creditors whose rights are championed by the administratrix, were not creditors of the first community, and only became creditors of the deceased in due course of commercial dealings, immediately preceding his death. Affirming decision in the succession of Boyer, 36 Ann. 506·

APPEAL from the Civil District Court for the parish of Orleans. *Monroe*, J.

*Hornor & Lee*, for the Administratrix, Appellant.
*White & Saunders*, for the Opponents, Appellees.

The opinion of the Court was delivered by

Poché, J. The facts bearing on the only point of controversy in this appeal are as follows:

The deceased had been twice married. At his death he left three minor children, issue of his first marriage, and the widow and a minor child of the second marriage.

The children of the first marriage inherited a considerable estate from their mother, consisting of her separate property and of her share in the community, which was largely solvent.

At the death of Applegate, his second wife, the widow, was appoint= ed and qualified administratrix of his succession.

In the account of her administration, which she presented to the Court, she charged the three minor children, issue of the first marriage, with the cost of their maintenance and education, at the rate of $1000 per annum for seven years and a fraction, footing up the sum of $7833 33. The charge was opposed by the tutor of said minors, and was disallowed by the district judge. Hence, her present appeal involves the legality of the charge, which she proposes to make against the minors of the first marriage. It is in proof, and in fact, admitted, that M. II. Applegate did not at any time make such a charge against the revenues of his children, and that he had never thought or intended to raise and educate them otherwise than at his own expense.

It also appears that during each and all of the seven years covered by the charge, as proposed by the administratrix, he was engaged in a prosperous business, from which he annually drew, for living and family expenses, an average of six thousand dollars ; that from the death of his first wife, up to and including the time of his own death, he was continuously solvent, and that he had ample means for the maintenance and education of his said minor children, without requiring a dollar of their income derived from the succession of their mother, and from the first community.

Under this showing, the controversy presented by this appeal is entirely covered by the principle announced, and by the rules of law adopted and enforced by this Court, in the case of the succession of Boyer, 36 Ann. 506, in which it was held : " The widow in community has no claim for money expended for the deceased husband in the maintenance of his heir, child of a former marriage, either during the minority or majority of such heir, in the absence of all evidence of any intention on the part of the husband, while living, of making such charge, and the community is entirely solvent and possessed ample revenues during its existence."

Conceding that, under the effect of that decision, she is precluded from making the claim as widow in community, the administratrix argues that she herein represents the creditors of the community, which she holds out as insolvent. Hence, she urges that her charge is predicated on the facts and circumstances which characterized the case of Mercier vs. Canonge, 12 Robinson, 394.

In order to claim shelter under the principles of that decision, the administratrix would be required to make proof of the following facts:

That the community between Applegate, the deceased, and his first wife was insolvent; that he had no other property; that the income of his minor children, out of their separate estate, was about sufficient to meet the cost of their maintenance and education, and that the creditors, whose rights she has undertaken to champion, were creditors at the date of the dissolution of the first community, or at least during the years for which she proposes to charge the minors for their maintenance and education.

These are substantially the facts and circumstances which make up the groundwork of the decision which she invokes in support of her contention, and in which the tutor was required to charge the expenses of his minor children to the revenues derived from their separate estate, in order to subject the revenues of the insolvent community to the action of its creditors. Only one of those features is disclosed by the record in this case, and that is an income out of the minors' separate property about sufficient to maintain and educate them. In every other feature the two cases are essentially different.

As we have already stated, the record in this case contains overwhelming evidence of the absolute solvency of the first community, and that none of the creditors of the second community were creditors of the first community which was dissolved by the death of the first wife in June, 1874.

It appears from the account that the rights of the creditors whose claims may be in conflict with the alleged rights of the minors of the first marriage, are evidenced by accounts current in the course of trade with the deceased, immediately preceding his death, while he was actively carrying on his business of plumber and gas-fitter.

And it also appears that at the very moment of his death, Applegate was thoroughly solvent and in excellent commercial condition, even in view of the allowance made by the district judge in favor of his said minor children.

The inventory of the second community shows assets amounting to $37,281.86, and debts, privileged and ordinary, in the sum of $20,-

250.32. Through the allowance made in favor of the minors the debts are increased by $12,666.78, and otherwise reduced by $2000.

It may be, as suggested by the administratrix, that on the final settlement of the succession and community, the amount of assets realized may not be exactly sufficient to extinguish the entire indebtedness of the community. But this result, which is not yet determined, because the assets have not as yet all been reduced to cash, will be solely attributable to the inevitable shrinkage in the value of a large stock of goods, when sold at auction, and the customary losses in the collection of bills receivable due to a commercial house, whose going business is suddenly checked by the death of the head of the house.

The test of the solvency of such a concern is to be found in its condition as shown by the inventory of the property made at or about the time that the house ends its career with the death of the owner. Thus tested, the community is shown to be solvent.

Our study of the case has led us to the conclusion that it must be governed by the decision in the Succession of Boyer, 36 Ann. 506, and that the district judge has correctly decided the issue which has been submitted to our review.

Judgment affirmed.