(59 South. 918.)

No. 19,024.

Succession of WAECHTER (two cases).

(Oct. 21, 1912. Rehearing Denied Nov. 18, 1912.)

*(Syllabus by the Court.)*

**1.** EXECUTORS AND ADMINISTRATORS (§ 490*) —COMMISSIONS—EFFECT OF LEGACY.

Where, though a legacy in money purports to be remunerative, it appears from the evidence that the services to which it refers were rendered by a minor to his father, by whom he was supported, that they were only such services as would ordinarily be rendered by a son to his father under such circumstances, and that they were rendered without expectation of pecuniary reward, the legatee cannot take both the legacy and his commission as executor, in the absence of express language in the will showing that such was the intention of the testator.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2078–2081, 2088; Dec. Dig. § 490.*]

**2.** HUSBAND AND WIFE (§ 273*)—COMMUNITY —CLAIMS AGAINST ESTATE—MONEY RECEIVED BY DECEDENT.

Where the father of minors, issue of one marriage, receives money for their account during the existence of a subsequent marriage and community, and retains it until his death, his succession is liable for the amount so received, principal and interest, without deduction for the maintenance or education of the minors, unless it be made clearly to appear that he intended that such deduction should be made.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

**3.** MINORS—ACCOUNTING.

Though the law prescribes different forms and methods of procedure for the attainment of different results, there are few, if any, which may not be waived by the parties concerned; and so, though a direct action may ordinarily be required to set aside a settlement by notarial act between a tutor and his wards, if the parties interested choose to litigate the question upon an opposition to an executor's account in the succession of the tutor, they may do so, and it will be too late for one of such parties thereafter, upon the argument of the case or upon the appeal, to object for the first time that the attack upon the settlement should have been by direct action.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 474, 540–544; Dec. Dig. § 163.*]

**4.** EXECUTORS AND ADMINISTRATORS (§ 514*)— ACCOUNTING—JUDGMENT.

Where an executor presents to the court what he calls a "provisional account and statement of debts," and oppositions are filed, couched in general language as to the whole account, with objections especially directed to particular items on the debit side, the judgment upon the oppositions should be conclusive, so far as possible, as to all the items exhibited by the account, though as to items which are not so exhibited the door must, of course, be left open for further opposition to accounts subsequently to be presented on demand or otherwise.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2292; Dec. Dig. § 514.*]

Appeal from Civil District Court, Parish of Orleans; Walter B. Sommerville, Judge.

In the matter of the succession of Mrs. Joseph Waechter, and the succession of Joseph Waechter. From the judgment, the executors and Arthur J. Waechter and another individually appeal. Modified.

Frank McGloin, of New Orleans, for appellants. Edgar M. Cahn, of New Orleans, for appellees.

Statement of the Case.

MONROE, J. The third and last wife of Joseph Waechter died intestate in 1905, and the surviving husband caused an inventory to be made showing the property of the estate (consisting of the interest of the wife in the community), and thereafter took out letters of administration, filed a provisional and a final account, both of which were homologated, without opposition, and was then discharged. Waechter himself died in November, 1909, leaving an olographic will which reads as follows:

"New Orleans, La., March 24th, '09.

"This is my last will and testament; I was married three times. I have only children by first and second mariage. No children of third marriage. I bequath to Sofie, wife of Joseph Savisch $500. Katie, wife of Oscar Zahn, $500. This is only two daughters is living by first mariage. I bequath all furniture and jewelry, diamond errings and beed close (except piano) all pitchers to Anna. I bequath piano and my wife watch and chain

to Stela. I bequath my watch and chain to George. I bequath watch and chain I give already to Arthur. I bequath $200 to Arthur also for services rendered. I bequath $25 for masses. I bequath to Mercedes and Muriel McMains each $100. Balance of my estate be share and share alike between all children from first and second mariage. In case I have settel with all my children moathers share no interest only the prissible of the amount paid. My own hand wriething,

"[Signed]                          Joseph Waechter.

"I appointed executor Peter McMain and Arthur Waechter without bond.

"[Signed]                          Joseph Waechter."

The parties named as executors presented the will to the court and obtained an order for its execution and for the taking of an inventory, and, after receiving letters testamentary, obtained a further order directing the consolidation of the proceedings in the succession of the decedent with those in the succession of his wife, and for a supplemental inventory to include the property of the community, in order that both successions should be settled in the same proceeding. Thereafter the executors filed a provisional account to which oppositions were filed by Thos. Connell, clerk of court and collector of the inheritance tax, and by Mrs. Sophie Savich and Miss Johanna Savich; the one a daughter, and the other, as we understand, a granddaughter, of the first marriage.

Judgment was rendered homologating the account so far as not opposed; there was a trial upon the oppositions mentioned and a judgment sustaining them; and the executors and Arthur J. Waechter and Stella E. Waechter, individually, are prosecuting this appeal from said judgment.

### Opinion.

Mrs. Savich and Miss Savich opposed, in general terms, all items on the account save that allowing the legacy of $500 to Mrs. Savich, and they especially opposed the allowance of executor's commissions to Arthur J. Waechter on the ground that he is a lega-

tee. Subsequently, however, they withdrew and discontinued their opposition "as to all items on said account on the sides of liabilities and assets, except the items on the liabilities side of said account numbered on said account 11, 36, 39, 40, 41, and 42." Items 11 and 36 allow Arthur J. Waechter commissions ($67.15 and $18.23) on property of the separate estate of the decedent and of the community, respectively; items 39 and 40 credit Stella E. Waechter with $59.35 and $893.81 as having been received by the decedent as her tutor; and items 41 and 42 credit Arthur J. Waechter with like amounts for a like reason—the last item in each instance (items 40 and 42) appearing subject to a credit to be ascertained upon the sale of certain property.

The affidavit of each of the executors to the effect that the account as filed "is true to the best of his knowledge and belief" appears upon the account, and we find in the record the testimony of Arthur J. Waechter, given in open court, though ex parte, to the same effect.

[1] Items 11 and 36: The evidence shows that when his stepmother died Arthur Waechter was about 16 years old, and that he was then living, and continued to live, at the house of his father, who continued to provide for him, as he had always done, up to the time of his (the father's) death some four years later. The son during the interval mentioned, or part of it, was employed by a wholesale dealer in jewelry, but his earnings were small, as they amounted to only $7.50 per week at the end of six years. Living, as he did, at his father's house and expense, he rendered such services as his father called on him to render, and as he found time to render, but none for which he expected, or could reasonably have demanded, compensation. We are therefore of opinion that the legacy of $200 was intended mainly, if not wholly, as a gratuity,

and hence precludes the legatee from receiving a commission as executor. Succession of Cucullu, 4 Rob. 397; Succession of Rice, 14 La. Ann. 317; Succession of Daste, 125 La. 657, 51 South. 677, 29 L. R. A. (N. S.) 297.

[2, 3] Items 39, 40, 41, 42: The evidence further shows that in March, 1894, the decedent received for account of each of his then minor children, Josephine, Louis, George, Arthur, Stella, and Annie (all of the second marriage), $893.81 from the successions of their grandparents, Christopher Grosskoff and wife; that in 1898 he received for account of each of said minors from Germany $59.35; that in August, 1896, he purchased, as tutor for account of said minors, a piece of real estate on Laurel street (in this city) for which he paid $1,500; that thereafter he paid (probably when, or after, they attained majority) the amounts due to Louis, George, Annie, and Josephine, respectively, with interest at 5 per cent., save, perhaps, in the case of George, to whom he paid only the principal amount, as shown by his canceled check for $953.16 of date February 24, 1908

In April, 1905, the two younger children, Stella and Arthur, were taken by their father and tutor before a notary public and emancipated to the extent of investing them with powers of administration, and on May 17th following they were again taken before a notary, where they signed authentic acts acknowledging that their tutor, after rendering his account with proper vouchers, had paid them in full, and granting him an acquittance and discharge therefor; a curator ad hoc, appointed by the court to represent the minors, being a party to the acts. It is, however, conclusively shown that, though an account was filed in court, which showed tnat the tutor owed each of said minors $893.81 with interest at 5 per cent. from March 5, 1894, and $59.35 with like interest

from February 5, 1898, no accounts or vouchers were delivered to them and nothing whatever was paid to them then or afterwards; that the acts were executed merely because the father requested the minors to execute them; and that the fact that they (the minors) were not paid was a matter of serious concern to the father almost to the day of his death. The facts thus stated are established by the testimony of Mrs. McMahon (whom we assume to have been, before marriage, Josephine Waechter), of Louis, Annie, George, Stella, and Arthur Waechter, of P. J. McMahon (husband of the witness first named, and one of the executors), and of the curator ad hoc to whom we have referred; and there is nothing to the contrary save the notarial acts whereby the minors granted their tutor his discharge, thereby enabling him to have canceled any mortgage in their favor which incumbered property that he desired to dispose of. Those acts were offered in evidence by the opponents, and were admitted over the objection of the opposing counsel, although the opposition in support of which they were offered is couched in about the language of a general denial save as to the items crediting Arthur Waechter with commissions as executor, and contains no plea of payment as against the items now under consideration, and, in fact, no mention of those items; and thereafter the testimony to which we have just above referred was introduced, without objection, and the case was heard upon the issues as thus presented. In the argument in the district court, as we infer, counsel for opponents contended, as he now contends, that the settlements, or alleged settlements, between the tutor and his wards, as evidenced by the notarial acts, could not be thus collaterally attacked; but that the parties interested in so doing must attack them by direct action. The contention came too late, for, though the law prescribes different forms and methods of procedure for the attainment of different results, there

are few, if any, which may not be waived by the parties concerned, and, as in this case, the opponents might have waived altogether the claim not asserted in their opposition that the minors, Stella and Arthur, had been settled with, a fortiori could they have waived, as they did, the necessity of a direct action for the assertion of that claim, and have acquiesced, as they did, in presenting the question to the court in the manner in which it was presented. Cross on Pleading, p. 129, § 113; Andrews v. Sheehy, 125 La. 218, 51 South. 122; Geisenberger v. Colton, 116 La. 651, 40 South. 929; Morris v. Cain, 34 La. Ann. 665; Hickman v. Dawson, 33 La. Ann. 438; Surgi v. Roselius, 14 La. Ann. 263; Butchert v. Ricker, 11 La. Ann. 489. As heretofore stated, the evidence shows that the tutor paid interest on the amounts received by him for account of the other children of the second marriage, with the exception of that received for account of George, and that he made no charge against them for maintenance; and the account filed by him shows that, making no charge for maintenance, he credited the minors, Stella and Arthur, with such interest. The case appears, therefore, to fall within the rule as thus stated, to wit:

"Money belonging to a child of the father by former marriage, received by him during the second marriage, is a debt of the second community, and it bears interest from the date at which it was so received, and such community is liable for both the principal and interest of the debt." Succession of Boyer, 36 La. Ann. 506. Also Succession of Applegate, 39 La. Ann. 400, 2 South. 42.

[4] The account here in question does not purport to be a final account. The executors by whom it was filed call it "their first provisional account and statement of debts," and as such only it is to be dealt with. It does not purport to marshal all the funds or property of the estate or to exhibit a complete and final list of the debts. As to the items which are exhibited by it, this litigation should be conclusive; but, as to items which do not appear on it, the door should be left open to those who may be interested. Whilst, therefore, we concur in several respects with the views embodied in the judgment appealed from, we think it advisable, in the interest of perspicuity, to set aside and recast it rather than attempt its amendment.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside; that the oppositions of Mrs. Sophie Savich and Miss Johanna Savich be maintained in so far as they relate to items 11 and 36 of the account crediting Arthur J. Waechter with commissions as executor, which items are ordered to be stricken off.

It is further decreed that in all other respects said oppositions, as also the opposition of Thomas Connell, clerk of court and collector of inheritance tax, be dismissed, without prejudice to the right of the opponents, or either of them, to demand a further accounting as to the assets of the succession under administration, and to oppose any accounts hereafter filed as to debit items not included in the present account.

It is further decreed that, so far as it goes, and as amended in conformity to this decree, the first provisional account and statement of debts be approved and homologated; and it is further decreed that the costs of the appeal be paid by the appellees.

SOMMERVILLE, J., takes no part herein.