This is a suit on a contract in which plaintiff claims the sum of $675.00 as the contractual price for plumbing services rendered for the benefit of defendant. After trial there was judgment in favor of plaintiff for the amount claimed in the sum of $675.00 with 5% per annum interest from June 5, 1948, from which judgment defendant appeals.
Defendant filed exceptions of no cause or right of action in which he embodied a so-called motion to elect and an exception of non-joinder, all of which pleas were overruled. Defendant, somewhat superficially, urges again these exceptions before this Court, and his insistence, though slightly pressed, requires some notice by this Court. *Page 698 
The exception of no cause or right of action is predicated upon the proposition that the contract sued on, which was attached to plaintiff's petition, required the work to be completed in a satisfactory manner, and that plaintiff had failed to allege such satisfactory completion. This point is clearly untenable in view of the fact that plaintiff's petition properly alleged that the work had been performed, and had been certified as satisfactory by the plumbing inspector of the City of Shreveport. Secondarily, defendant urged that plaintiff's petition attempted to cumulate two separate and distinct demands and that, accordingly, he should be compelled to elect between a suit on contract or upon quantum meruit. We find nothing in the petition which indicates any inconsistency in plaintiff's prayer for relief. The claim is based upon the contract and upon his right to recovery thereon plaintiff exclusively relies.
The plea of non-joinder was based upon consideration of facts and circumstances which transpired long prior to the execution of the contract which is the basis of this suit, and which, perforce, could have no bearing upon this action.
The exceptions were properly overruled.
On the merits a number of defenses were urged. First, that the work of the contract was never completed; second, that the work was not satisfactory; and third, that plaintiff's demands were premature; and, finally, that defendant was forced into the execution of the contract sued on through conspiracy and coercion, to which plaintiff was a party.
The first two points may be readily disposed of by the observation that the facts adduced on trial of this case utterly and completely fail to substantiate defendant's contentions that the work was not completed and that the same was not satisfactory. This conclusion is so overwhelmingly established that we deem it unnecessary to enter into a detailed discussion of these points.
The defense of prematurity is predicated upon the proposition that plaintiff was cognizant of the fact that the contract had not been complied with at the time of filing suit. The only support for this claim is that plaintiff knew that defendant disclaimed the satisfactory completion of the work. Therefore the conclusion upon which this particular defense is based is solely a matter of opinion within the mind of defendant himself. To sustain this defense would be in effect to pronounce the amazing doctrine that a suit is premature so long as a defendant denies the correctness of a plaintiff's claim. Though, perhaps, this would have what might be regarded as some salutary effect by way of terminating all litigation, it would, indeed, be such a severe and final blow to our legal system and the orderly processes of law heretofore recognized that we cannot assume the responsibility for such a pronouncement.
Finally, we come to a consideration of defendant's claims of conspiracy and coercion in the execution of the contract. At this point, though we dislike to burden the record further, we find it desirable to quote the body of the contract between plaintiff and defendant, which contains a recapitulation of material facts:
"This agreement entered into between Robert J. Newson, hereinafter referred to as the first party and W. F. Schroeter, hereinafter referred to as the second party, Witnesseth:
"That whereas, the first party hereto has heretofore purchased at public sale in foreclosure of a mortgage, the property described as Lots 188 and 189 of the Cedar Grove Addition to Shreveport, Caddo Parish, Louisiana, with all buildings and improvements thereon and,
"Whereas, the second party hereto did do and perform certain plumbing, this plumbing consisting of a contract to do the necessary plumbing on the building on said Lot 188, and
"Whereas, the second party hereto did file a lien, and this lien appears of record in Mortgage Book 343, page 416 of the Records of Caddo Parish, Louisiana, against both the above described lots and the amount of said alleged lien being Six Hundred Thirty Nine and 67/100 ($639.67) Dollars, and, *Page 699 
"Whereas, there is a dispute that exists between the first party and the second party hereto in that the first party does deny that the second party has a lien that would come ahead of his mortgage and also that the plumbing that has been done is of any value whatsoever to the property unless it is finished, since party of the first part has a letter from the Plumbing Inspector saying that he will not allow anyone but party of the second part to finish this plumbing, and also denies that the work that has been done is of anywhere near the amount of Six Hundred Thirty Nine and 67/100 ($639.67) Dollars, and on the other hand, second party hereto does contend that insofar as the amount of Six Hundred Thirty Nine and 67/100 ($639.67) Dollars, being correct is the true and correct amount due him, and that his lien is a prior lien and claim superior to the mortgage hereto foreclosed by the first party as against O. A. Young, the former owner of the property, and now,
"The parties hereto, in the hope of gain, as balanced against the possibility of loss, do enter into the following compromise agreement:
"That the second party does now agree to do all that is necessary to complete the plumbing in a satisfactory manner in and about the premises and especially the building located on Lot 188 and to the end that the Plumbing Inspector of the City of Shreveport does approve the plumbing and give his written assent thereto; that the first party does agree upon the satisfactory completion of said work to pay the second party Six Hundred Seventy Five no/100 ($675.00) cash, in full satisfaction of all claims and liens due second party.
"That this agreement is the sole and only agreement between the parties hereto and that only what is shown in this agreement and no other understanding has any effect other than what is shown herein."
The quoted instrument is so clearly a compromise agreement falling directly under the provisions of Article 3071 of the Civil Code that its recitals would be absolutely conclusive and binding upon the parties were it not for defendant's assertions of coercion and conspiracy, which are equivalent to fraud and which would vitiate the agreement if established.
Briefly, defendant contends that plaintiff was issued a permit to do certain plumbing work on the property involved in this lawsuit, described as Lots 188 and 189 of the Cedar Grove Addition to the City of Shreveport; that defendant later became the owner of the property by purchase at foreclosure sale; that the plumbing work was incomplete and that its completion was necessary to defendant's use and occupancy of the property; that plaintiff claimed an unpaid lien for work performed in the sum of $639.67; that plaintiff refused to complete the plumbing job on the property until defendant entered into the agreement, which is the basis of this suit, for a stated consideration of $675.00; that by reason of a conspiracy between plaintiff and all the master plumbers of the City of Shreveport defendant could not procure the services of another plumber for the completion of the job; that by reason of a further conspiracy between plaintiff and the plumbing inspector of the City of Shreveport the said inspector refused to permit the completion of the job by any other plumber other than plaintiff; that as a result of these conspiracies defendant was in effect coerced by necessity into executing the compromise agreement and contract for the stipulated amount of $675.00.
All of the above facts down to the first claim of conspiracy are established and they are comprehended in the compromise agreement and contract above set forth. It cannot be successfully denied that plaintiff had performed work on the property prior to defendant's acquisition thereof and that he claimed a lien in the amount of $639.67. It further appears to be exceedingly clear that plaintiff, quite justly, was insistent upon effecting an agreement which would assure him the recovery of the amount of his claim, together with such additional sum as might be necessary for the completion of the work, which apparently was comparatively slight in extent. All of these facts are implicit in the record and they were all known to both parties and were the subject of considerable disagreement, dispute and contention, which was definitely *Page 700 
terminated and settled by the compromise agreement.
Under these facts we seriously doubt if even defendant's claims of conspiracy and coercion could properly be heard in support of his attempt to set aside the effect of the agreement. Be this as it may, defendant again has signally failed to support his charges except through deductions and conclusions based upon untenable speculations. The clear-cut, convincing and uncontradicted testimony of the plumbing inspector of the City of Shreveport establishes the fact that under existing municipal ordinances, and regulations pursuant thereto, having once issued a permit for a specific job to a particular contractor, he is prohibited from issuing another permit until a release of the original certificate has been effected. The practical reasons for such procedure are obvious.
Similarly there is no support in the record of the charges of conspiracy between the plumbers of Shreveport and the plaintiff and the plumbing inspector.
There appears to be no ground for criticism, and, certainly, it is no defense, that plaintiff insisted upon an agreement which would assure his recovery of the amount represented by his services to the property involved. If the compromise agreement had not been concluded, unquestionably plaintiff would have been relegated to the necessity of instituting suit for the establishment of his claimed lien, the recognition thereof and the recovery of the amount covered thereby. It was for the plain purpose of avoiding this necessity, which unquestionably was in the mind of defendant as well as plaintiff at the time, that the compromise agreement was worked out. If plaintiff failed to avoid litigation by the pursuit of this means, the fault is chargeable only to the defendant.
One other point has been raised by defendant, who claims error in the allowance of interest of 5% per annum from June 5, 1948. Reference to the contract shows that the amount became due on completion of the work. Plaintiff alleged that the work was satisfactorily completed, as evidenced by certificate of completion from the city plumbing inspector, on May 20, 1948, from which date he prayed for the allowance of interest. The judgment of the District Court allowed interest from date of June 5, which was the date of plaintiff's formal demand upon defendant for payment.
Under the plain provisions of Article 1938 of the Civil Code, legal interest began to run at the time the amount became due, which in this instance was May 20, 1948. Due to the fact that plaintiff has not chosen to answer the appeal, defendant, in reality, has gained the advantage of the accrued interest between the dates of May 20th and June 5th.
For the reasons assigned the judgment appealed from is affirmed at appellant's cost.