131 So.2d 76 (1961)
Mrs. Elizabeth Schulze CULPEPPER, Executrix, Plaintiff-Appellee,
v.
Lewis C. SLATER, Administrator, Defendant-Appellant.
No. 9514.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1961.
Rehearing Denied June 22, 1961.
*77 John F. McCormick, West Monroe, Hayes, Harkey & Smith, Monroe, Madison, Madison, Files & Shell, Bastrop, for appellant.
Thompson, Thompson & Sparks, Monroe, White, Holloman & White, Alexandria, for appellee.
Before GLADNEY, AYRES, and BOLIN, JJ.
AYRES, Judge.
This is a contest between the successions of Mr. and Mrs. Charles E. Bynum. Involved is one of the many phases of the litigation with which these successions have been concerned. See: Slater v. Culpepper, 222 La. 962, 64 So.2d 234, 37 A.L. R.2d 1216; 233 La. 1071, 99 So.2d 348; Slater v. Culpepper, La.App.2d Cir., 1961, 129 So.2d 499.
The issue presented for resolution in the instant action relates solely to the term during which an admitted obligation of the husband's estate to the wife's estate bears interest. Plaintiff, as representative of the wife's estate, contends the indebtedness bears interest from the date of her death, whereas defendant, as representative of the husband's succession, contends that interest is due only from judicial demand in the absence of a prior demand. The trial court held that the obligation sued upon bore interest from the date of the dissolution of the community of acquets and gains formerly existing between Mr. and Mrs. Bynum as a result of her death July 24, 1948. From a judgment in accordance with that conclusion, the defendant appealed.
In this court plaintiff has moved for a dismissal of the appeal on the ground that defendant consented to and acquiesced in the judgment. The basis for this motion is that defendant agreed and stipulated that judgment be rendered as prayed for. The prayer was for judgment for the amount of the claim, with legal interest thereon from July 24, 1948, until paid. The stipulation referred to, although the minutes of the court reflect its filing, is not contained in the record. It was apparently lost. Hence, we are unable to determine from the record the exact import of the stipulation, in view of a disagreement between the parties as to its contends. It may be appropriate to point out that the defendant, in his answer, recognized the principal of plaintiff's claim, but contends interest was due only from judicial demand. However, on the realization that the judgment awarded interest from the dissolution of the community, defendant perfected this appeal.
An appeal, of course, cannot be taken by a party who has voluntarily and unconditionally acquiesced in the judgment rendered against him. LSA-C.C.P. Art. 2085. However, the jurisprudence is well settled that for one to lose the right of an appeal on the ground alleged there must be an absolute voluntary and unconditional acquiescence in the judgment on his part, coupled with the intention to abandon the right to appeal. Scott v. Scott, 218 La. 211, 48 So.2d 899; Sanderson v. Frost, 198 La. 295, 3 So.2d 626; Rex-Metallic Casket *78 Company v. Gregory, La.App.2d Cir., 1958, 104 So.2d 185.
The showing made in the instant case is inadequate, in our opinion, to establish voluntary or unconditional acquiescence in the judgment or to establish that the appellants had the intention to abandon the appeal. The motion to dismiss the appeal must, therefore, be overruled.
On the merits, the issue presented for determination, as heretofore stated, relates solely to the date from which plaintiff's claim bears interest. In contrast to the simplicity with which the question may be stated, its solution is most difficult.
The record establishes these facts, material and pertinent to the issue presented: Mr. and Mrs. Bynum were married March 28, 1888, and lived together as man and wife under a regime of a community of acquets and gains. One son was born of their marriage, who, however, preceded them in death. During their marriage, these parties acquired considerable property and, comparatively speaking, amassed a fortune. The community of acquets and gains was dissolved by Mrs. Bynum's death July 24, 1948. Inventories taken in her succession listed both separate and community assets. In the latter classification was a bank account of $28,288.65 in the name of Charles E. Bynum. One-half of this account was inventoried in Mrs. Bynum's succession. Mr. Bynum, at the time of his wife's death, was ill, both physically and mentally, requiring constant attention to his every need. Nurses were in constant attendance until his death March 7, 1950. During the interval between their deaths, the funds on deposit in the aforesaid account were for the most part concededly used and expended for his care. Thus, he and his estate became and were obligated and indebted unto the estate of Mrs. Bynum to the extent of her interest in said account. Since the funds were expended after the wife's death, it was impossible for the wife's succession to recover or to be recognized as the owner of an interest in that particular fund, and, therefore, the matter was reduced to one of an obligation of the husband or of his estate to the succession of the wife.
Interest is defined as damages due for the delay in the performance of an obligation for the payment of money, and such damages are payable without the necessity of proving any specific loss. LSA-C.C. Art. 1935. All debts, unless otherwise excepted, bear interest at the legal rate of five per cent per annum from the time they become due. LSA-C.C. Art. 1938.
In resolving the question as to when the debt herein concerned became due, consideration must be given to the applicable provisions of the LSA-Civil Code. For instance, one's succession is opened by his death or on the presumption of his death. LSA-C.C. Art. 934. A succession is acquired by the legal heir or by the testamentary heir, other than a particular legatee, who is called by law to the inheritance immediately after the demise of the decedent to whom he succeeds. LSA-C.C. Art. 940. This right is acquired by the heir through the operation of law alone without any action on his part to place himself in possession and even without any expression of his will to accept it. LSA-C.C. Art. 941. There is a continuity of legal possession of the succession in the heir (LSA-C.C. Art. 942) and this right of possession extends to all rights which may be transmitted by inheritance or by will. LSA-C.C. Art. 943.
The effects of the heir having succeeded to the rights of the deceased at the moment of his death are: (1) that the heir transmits the succession to his own heirs (LSA-C.C. Art. 944); and (2) the heir is authorized to institute and prosecute all actions which the deceased had a right to institute (LSA-C.C. Art. 945). Where seizin is granted by the testator, as was done by Mrs. Bynum, the executor or executrix may take possession of the estate (LSA-C.C. Art. 1660).
Under the aforesaid codal provisions, the property of a deceased person *79 is, on his death, transmitted directly and immediately to the legal heir, or, in the absence of forced heirs, to a universal legatee without any action having been taken on his part to cause himself to be placed in actual possession. Succession of Stevens, 137 La. 613, 69 So. 26; Tulane University of Louisiana v. Board of Assessors, 115 La. 1025, 40 So. 445, 446.
In the latter of these cases immediately hereinabove cited, it was stated:
"Our Code leaves no room whatever for doubt or surmise as to the fact of the property of a deceased person being transmitted directly and immediately to the legal heir, or, in the absence of forced heirs, to the universal legatee, without any intermediate stage when it would be vested in the succession representative, or in the legal abstract called `succession.' The law on that point is so explicitly stated in the Code, and has been so frequently applied, that nothing more is needed here than to give the numbers of the articles of the Code bearing upon the point, and the pages of the Reports where a few of the very numerous decisions are to be found: Articles 940, 941, 942, 943, 944, 945, 946, 947, 1609, 1611, and 1671; Womack v. Womack, 2 La.Ann. 341; Frazier v. Hills, 5 La.Ann. [113] 114; Addison v. [New Orleans Sav.] Bank, 15 La. [527] 529; Succession of Dupuy, 4 La.Ann. [570] 571; Burbridge v. Chinn, 34 La.Ann. 681. * * *"
It was also contended in that case that the ownership of the property of the estate was in the succession. However, it was stated:
"The learned counsel for defendants contend that, pending the administration of the succession, the ownership of the property is vested in the succession; and in support of that contention they cite the cases of City v. Stewart's Estate, 28 La.Ann. 180; State v. Brown, 32 La.Ann. 1020; Carter v. City, 33 La.Ann. 816; and Succession of Levy, 115 La. 377, 39 So. 37 [8 L.R. A.,N.S., 1180].
"If these decisions went counter to the doctrine expressed by the maxim, `Le mort saisit le vif,' whereby the ownership of the property is transmitted directly and immediately from the testator to the heir, or to the universal legatee, as the case may be, they would be in the teeth of the Code, and would simply have to be brushed aside. Far from it, they are to the contrary effect. Thus, in the case cited from 32 La.Ann. 1020 (State v. Brown), the court expressly says:
"`The maxim, "Le mort saisit le vif," is expressly embodied in our Civil Code, and excludes the interposition of any temporary and qualified ownership, such as that of administrators, between the deceased and his heirs. Civ. Code, art. 940 et seq.
"These decisions do not mean to hold, and do not hold, that the abstract being called `succession' is owner of the property in the sense of excluding, or affecting in the slightest degree, the ownership vested in the heir or in the universal legatee. When these decisions speak of the succession being owner, they mean, as a matter of course, that it is holding for the true owner, and merely for the purposes of administration. Nothing that is said in them is intended to detract in the slightest degree from the recognized ownership of the heir, or of the universal legatee, as the case may be, and from the substantial rights (such as that of exemption from taxation) flowing from such ownership. This is very clearly expressed in Cross on Successions, §35, as follows:
"`The seisin of the succession representative operates merely to protect his title as detainer of the property for the purpose of his administration; while *80 the seisin of the heir, conflicting in no respect with the other, operates as the sign of his title as owner of the estate, subject to its liquidation under administration. The former has actual control of the estate under the legal conditions prescribed; but it is the heir or universal legatee, as the case may be, who reaps all the proprietary advantages of possession, such as accretion, prescription, perception of fruits, etc. So, Toullier (IV, 582) says: "The seisin of the executor does not interfere with that of the heir of blood, or of the universal legatee, in the case where the latter has seisin. It is always the heir who has the veritable possession; he is alone seised as proprietor. The executor possesses only as depositary in the name of the heir, or universal legatee, who can put an end to the seisin by offering to turn over to the executor a sufficient amount to pay the movable legacies, or by giving security for their payment, and that, even when the testator had charged the executor to sell all his property."`"
In the Succession of Boyer, 36 La.Ann. 506, wherein it appears that upon the death of a mother, a minor daughter inherited a mortgage claim upon which her father as her natural tutor collected a sum of money, collection of a portion of the indebtedness was made prior to a second marriage of the father. The balance was collected after such marriage. And, it was held that money belonging to a child of a father by a former marriage, received by him as tutor during a second marriage, was a debt of the second community and bore interest from the date it was received. See, also: Succession of Applegate, 39 La.Ann. 400, 2 So. 42; Succession of Waechter, 131 La. 505, 59 So. 918; Harrell v. Crow, 214 La. 543, 38 So.2d 226; Schroeter v. Newson, La.App.2d Cir., 1949, 41 So.2d 697; Carey v. Sentell, La.App.2d Cir., 1953, 64 So.2d 451.
In Friede v. Myles Salt Co., La.App. Orleans, 1937, 177 So. 105, 108, plaintiff claimed a balance due for services rendered to defendant in the preparation of a traffic study involving transportation of its products from its mines at Weeks Island. Defendant denied owing interest except from judicial demand. With reference to the point thus raised, the court, through Judge Janvier as the author of the opinion, stated:
"We next consider the question of interest to be allowed and the date from which it should commence to run. Counsel for plaintiff argues that legal interest should have been allowed from the time at which the debt became due, and that that time was June 11, 1936, the day on which plaintiff rendered a bill for services. This argument is based on article 554 of the Code of Practice and on article 1938 of the Civil Code. But counsel for defendant maintain that the claim, until judgment was rendered, was an unliquidated one, and that, therefore, interest should be allowed only from judicial demand.
"We note that prior to 1839, interest was not allowed on accounts or unliquidated claims. Until that time, article 554 of the Code of Practice of 1825 provided that: `No interest shall be allowed on accounts or unliquidated claims.' We deem it significant that by Act No. 53 of 1839 that provision was repealed. Now, apparently as a result of Act No. 181 of 1852, the article reads as follows: `Interest at the rate of five per cent. shall be allowed on all debts from the time they become due, unless otherwise stipulated.'

"The Civil Code provision on the subject has sustained a similarly significant alteration. Article 1932 of the Code of 1825 provided that: `In contracts, which do not stipulate for the payment of interest, it is due from the time the debtor is put in default for the payment of the principal, and is to be calculated on whatsoever sum shall be found by the judgment to have been due at the time of the default.'
*81 "However, that article (1932) of the former Code has now become article 1938 of our present Civil Code, which reads as follows: `All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated.'
"It is obvious that both changes indicate an intention that interest shall be allowed on unliquidated, as well as on liquidated, claims, and that interest shall commence to run at the time the debt becomes due, regardless of putting in default.

"Act No. 206 of 1916, providing `that legal interest shall, hereafter, attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto"` has no application, for, by its own terms, it controls only ` * * judgments, sounding in damages, "ex delicto."'" (Emphasis supplied.)
It was thus held that the account was due on completion of the services rendered without regard to a placing or a putting of the defendant in default. In an action to compel a defendant to account for a mortgage note, the Supreme Court, in Pease v. Gatti, 205 La. 949, 18 So.2d 511, 513, after quoting with approval as we have done, from Friede v. Myles Salt Co., supra, stated:
"Under this interpretation of the mentioned provisions of our present Civil Code and Code of Practice (Articles 1938 and 554 respectively), it must be held that legal interest on plaintiffs' claim commenced to run on July 25, 1931, the date when defendant received the $3,000 promissory note that rightfully belonged to Pease. This conclusion is further supported by Lotz v. Hurwitz et al., 174 La. 638, 141 So. 83, in which we held that the sum defendants were required to pay to make a wall on plaintiff's property a party wall should bear interest from date defendants took possession of it, this being the time when the indebtedness became due and demandable."
From the foregoing authorities, as well as the codal provisions referred to, the conclusion is inescapable that the community of acquets and gains existing between Mr. and Mrs. Bynum was dissolved by and as of the date of her death; that her heirs, whether legal or testamentary, succeeded immediately to her succession and to their inheritance, in the absence of surviving children over whose interest the surviving parent would have had the right of usufruct. In this connection, see: Jeansonne v. Jeansonne, 187 La. 939, 175 So. 626; Ramsey v. Beck, 151 La. 190, 91 So. 674; Succession of Dumestre, 42 La.Ann. 411, 7 So. 624; Tugwell v. Tugwell, 32 La. Ann. 848.
Mrs. Bynum's heirs, having succeeded immediately upon her death to her estate, settlement therefor was due and demandable as of that date. The surviving husband, having and retaining possession of the bank account and using and expending the funds thereof as his own for his individual use and benefit following the wife's death, became obligated to the wife's succession for the amount of her interest therein. Settlement of the community estate being due and demandable as of the date of its dissolution, the indebtedness admittedly due bears legal interest from the due date of that obligation, that is, from July 24, 1948.
Before concluding this opinion, we feel we should give consideration to and briefly comment upon the question of equity of the situation so earnestly urged upon us by the defendant's counsel. In this connection, it is correctly pointed out that in that phase of the litigation with which the instant case was consolidated for trial in the lower court, the husband's succession was allowed interest on the indebtedness due by the wife's succession only from judicial demand. Hence, it is contended that no different, nor more favorable, treatment *82 should be accorded the wife's estate in the instant case.
However, when the facts are considered, the equity of the situation is not so readily manifested as counsel's statement would indicate. In the action referred to, the matter of the allowance of interest from the dissolution of the community was apparently not made an issue. Interest was awarded from judicial demand as was prayed for. Moreover, judicial demand on plaintiff's succession was made November 15, 1950, following Mr. Bynum's death March 7, 1950. The difference in time between these dates was and is of small consequence. But, in the present action, judicial demand was not made until July 19, 1956, or eight years following Mrs. Bynum's death. This difference in time is, in our opinion, consequential and important in balancing or offsetting the accounts between the successions, particularly so that an unwarranted advantage is not accorded one with a resulting injustice to the other.
Observation may properly be made that when two persons are indebted to each other, compensation takes place between them that extinguishes both debts (LSA-C.C. Art. 2209), by the mere operation of law, as soon as they exist simultaneously, to the extent their sums are equal (LSA-C.C. Art. 2208), where the debts have equally, for their object, a sum of money and which are equally liquidated and demandable (LSA-C.C. Art. 2209). By the application of the aforesaid principles, the indebtedness herein concerned would have been entirely extinguished on its simultaneous existence with the greater indebtedness due to the husband or to his succession. A saving of interest to the wife's succession would have accordingly been effected by a reduction in principal of its indebtedness to defendant.
If a resolution of the issue presented here could be made solely on the basis of equity, it might be proper and appropriate to observe that equity may be on the side of the wife's succession, where, by the invocation of the principle of compensation or offset, plaintiff's claim would have been extinguished from its inception. A reduction by an equal amount would have resulted in defendant's claim with a corresponding reduction of interest.
Nevertheless, for the aforesaid reasons, the motion to dismiss the appeal should be, and it is hereby, overruled; and the judgment on the merits is, in our opinion, correct, and it should be and it is, accordingly, affirmed at defendant-appellant's cost.
Affirmed.