167 So. 200

**LEADMAN v. FIRST NAT. BANK OF SHREVEPORT.**

No. 33520.

March 2, 1936.

Rehearing Denied March 30, 1936.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellant.

Albert P. Garland, of Shreveport, for appellee.

LAND, Justice.

Gabe M. Leadman, Sr., died in the city of Shreveport, La., in April, 1926. He was survived by his widow, Mrs. Jessie T. Leadman, now Mrs. Brewster, and one child of the marriage, then a minor, the present plaintiff.

Deceased left considerable estate, the usufruct of which was left by will to the surviving widow.

From the proceeds of life insurance, the widow received $25,000, and the son, $15,-000. These amounts were deposited in defendant bank in two separate accounts, one styled "Mrs. Jessie T. Leadman," and the other "Mrs. Jessie T. Leadman, Tutrix Gabe M. Leadman, Jr."

Pursuant to the request of the deceased, the widow frequently advised with Mr. Andrew J. Querbes, president of defendant bank, with reference to financial matters.

At the date of the filing of this suit, September 18, 1934, Gabe M. Leadman, Jr., was under the age of 21 years, but over the age of 18 years, and had been emancipated on October 2, 1933. His mother, Mrs. Jessie T. Leadman, continued to serve as natural tutrix until the emancipation of her minor son.

Alleging that defendant bank, through its president, officials, and employees, with full knowledge of the facts, and without order of court, received various amounts in checks drawn by his natural tutrix against funds in the tutorship account in the bank, in payment of her personal obligations, petitioner seeks in the present suit to recover judgment against the bank in the full sum of $6,383.-

65, with legal interest on the following items from respective dates mentioned until paid, to wit:

$4,300.00 from April 14, 1928
426.40 from September 19, 1931
87.00 from October 20, 1931
110.00 from July 1, 1932
164.25 from September 29, 1932
164.25 from January 7, 1933
164.25 from April 16, 1933
164.25 from July 6, 1933
164.25 from October 4, 1933
525.00 from May 16, 1933
114.00 from June 28, 1928

Total $6,383.65

The lower court rejected in its judgment the first item of $4,300 of date April 14, 1928, and the next to the last, the item of $525 of date May 16, 1933; but rendered judgment in favor of petitioner for all the other items in the sum of $1,558.65, with legal interest from the date of each item until paid.

From this judgment the defendant, First National Bank of Shreveport, has taken a suspensive appeal; and petitioner, appellee, has answered the appeal, and prays that the judgment of the lower court be so amended as to include the rejected items of $4,300 and $525.

1. As to the rejected item of $4,300, petitioner makes the following allegations:

"Paragraph 5.

"That on October 17, 1927, Mrs. Jessie T. Leadman used $4,300.00 of funds belonging to petitioner, on deposit in the First Na-

tional Bank of Shreveport, a banking corporation organized under the laws of the United States and domiciled in Shreveport, Caddo Parish, Louisiana, in an account styled Mrs. Jessie T. Leadman, Tutrix of Gabe M. Leadman, Jr., to purchase from the First National Bank a mortgage note of the Shreveport Ice and Brewing Company, a corporation in which Andrew J. Querbes owned the majority of stock, for the sum of $5,000.00, *for petitioner's account.*

"Paragraph 6.

"That the above mentioned sum of $4,-300.00 of petitioner's funds *were* (was) *invested* in the above mentioned mortgage note on the advice and to the knowledge of Andrew J. Querbes.

"Paragraph 7.

"That after the purchase of such mortgage note with petitioner's funds *and for his account,* Andrew J. Querbes, and other officials and employees of the First National Bank, caused the above mentioned mortgage note to be attached *as collateral to a personal note* of Mrs. Jessie T. Leadman in favor of said bank, for the sum of $4,500.00, dated December 31, 1927, given in evidence of a personal obligation due by her to said bank.

"Paragraph 8.

"That on April 24, 1928, the First National Bank of Shreveport issued a credit memorandum to Mrs. Jessie T. Leadman for $5,000.00 for purchase price of the above mentioned mortgage note, which it stated it had purchased from her on April 15, for that sum; and on April 24, 1928, said bank issued her a debit memorandum, stating

that it had charged her personal account with $4,500.00, being the amount of her personal note mentioned in article seven hereof.

## "Paragraph 9.

"That *by such manipulation,* the First National Bank of Shreveport, through Andrew J. Querbes and other officials and employees, diverted $4,300.00 of funds belonging to petitioner on deposit with said bank in an account kept in the name of Mrs. Jessie T. Leadman, Tutrix of Gabe M. Leadman, Jr., *to the payment of a personal obligation* due by Mrs. Jessie T. Leadman to said bank, and, with full knowledge, received and applied $4,300.00 of petitioner's funds to the payment of an obligation not due by him to it, but due by his natural tutrix to it, to the advantage and profit of said bank." (Italics ours.)

In its answer to the above paragraphs of the petition of Gabe M. Leadman, Jr., defendant bank avers:

## "Paragraph 3.

"In answer to the allegations of paragraph five defendant admits that in October 1927, Mrs. Jessie T. Leadman *purchased from defendant a note* of Shreveport Ice & Brewing Company in the principal sum of Five Thousand ($5,000.00) Dollars and of the purchase price of this note the sum of Forty-three Hundred ($4,300.00) Dollars was paid by a check upon an open or checking account carried with your defendant styled Mrs. Jessie T. Leadman, tutrix of Gabe M. Leadman, Jr., otherwise the allegations of this paragraph are denied.

## "Paragraph 4.

"The allegations of paragraph six are denied.

## "Paragraph 5.

"The allegations of paragraph seven as written are denied; and defendant shows that on or about the date alleged a loan in the sum of Forty-five Hundred ($4,500.00) Dollars was made to Mrs. Jessie T. Leadman upon the security of a certain note of the Shreveport Ice & Brewing Company or a note issued by the receiver of that corporation which was delivered in pledge by the said Mrs. Jessie T. Leadman *as her property* and accepted by defendant for value and *in good faith* as collateral security for the repayment of the obligation mentioned.

## "Paragraph 6.

"In answer to the allegations of paragraph eight, defendant admits that it repurchased the note delivered to it. as collateral security by Mrs. Jessie T. Leadman from the proceeds of which her loan was paid and a debit memorandum issued to that effect. The remaining allegations of this paragraph are denied.

## "Paragraph 7.

"The allegations of paragraph nine are denied." (Italics ours.)

The trial judge found from the evidence that the facts set up in defendant bank's answer were true and correct, that there was "no manipulation" upon the part of defendant bank, as charged in the petition, but that the bank acted in good faith in taking the note.

We quote from the opinion of the judge a quo the following:

"That no order of Court was secured for the purchase of the note is admitted; that $4,300.00 of the funds in the Tutrix Account was (were) used in the purchase of *a* note is admitted. It was long after this transaction, that Mrs. Leadman wanted to borrow $4,500.00 from the defendant. She pledged a note of the Shreveport Ice & Brewing Company as collateral, taking the same from her bank box where she had this note and two others identical in amount, etc., which belonged to her personally. What means she had of telling one note from the other we do not know. The bank had no means of telling one note from the other. Granting that the bank knew that the minor owned one note, then by the same token it knew that she owned two identical notes. The notes were negotiable in form; she presented the note in pledge as *her property,* and we cannot see where the bank was under any legal obligation to make inquiry as to whether or not she owned the note. Under the Negotiable Instrument Law, the bank was in good faith in taking the note. There was no *manipulation* or fraudulent scheme on the part of the bank to divert the funds of the minor to its own advantage and profit. We cannot say, and do not say, and do not think even, that Mrs. Leadman knowingly used a note belonging to the minor as pledge for her personal debt at a time when she had double that amount in identical notes in the same bank box. We do not think she would be guilty of such a thing. And neither do we think that plaintiff has proved his allegations on this score and should not be allowed to recover in this suit. Whether he can recover in a different kind of suit is not involved here." (Italics ours.)

We approve the finding of facts and conclusions reached by the district judge as to the rejection of the item of $4,300.

2. As to the rejected item of $525, petitioner makes the following allegations:

"Paragraph 22.

"That on May 11, 1933, the First National Bank of Shreveport collected from the Shreveport Mutual Building Association on stock belonging to petitioner the sum of $1,-000.00 principal and $1.84 interest, and credited the account of Mrs. Jessie T. Leadman, Tutrix for G. M. Leadman, Jr., therewith, but at the same time debited such account with the sum of $525.00 due by Mrs. Jessie T. Leadman personally on a note executed by her in favor of said bank on February 2, 1932, for which petitioner was in no manner liable."

In paragraph 15 of the answer of defendant to the allegations of paragraph 22 of the petition it is averred: "Your defendant shows that the transaction referred to was represented by Mrs. Leadman to be for the account of the minor, Gabe M. Leadman, Jr., and the expenditure permitted by the loan made one necessary for his maintenance and education; that although the note executed was signed by Mrs. Jessie T. Leadman, the indebtedness was actually incurred by her as tutrix for the minor and merely temporarily until the funds of the minor could be secured by withdrawal from the Shreveport Mutual Building Associa-

tion according to the rules of the institution."

On February 2, 1932, Mrs. Jessie T. Leadman borrowed from the bank, on her personal note, the sum of $525, and, in order to secure the loan, pledged without an order of court, as collateral, $1,000 of building and loan stock, belonging to the minor. She informed the president of the bank that the loan was being obtained for the purpose of transporting her son to and from school. At that time he could not walk, being a cripple, and he is still in that condition. Although Mrs. Leadman signed the note personally, it was known by all the parties to the transaction that the money was being borrowed for the sole use and benefit of the minor, and that the payment was to come out of his funds as soon as the collateral was paid off. The building and loan was not paying upon presentation, and Mrs. Leadman, as tutrix, had to give notice to retire the stock, and it would have been some months before she could obtain the money. Under this state of facts, the trial judge properly held that petitioner could not recover, as Mrs. Leadman was acting for the minor, and, if the loan had not been repaid, the minor could have been held liable for it.

■ 3. The item of $426.40 was paid to the bank by Mrs. Jessie T. Leadman, in part payment of her personal note for $512.-40 for purchase of insurance on her life from R. H. Deas, and the note was sold by him to the bank.

This item was paid the bank by check payable to its order and drawn by Mrs. Jessie T. Leadman, tutrix, on the account

in the bank styled Mrs. Jessie T. Leadman, tutrix of Gabe M. Leadman, Jr.

4. The item of $87 was for premium on insurance on the life of Mrs. Leadman, for which she gave her personal note to R. H. Deas. The note was sold by him to the bank, and was paid by Mrs. Leadman by check payable to order of the bank and drawn by the natural tutrix on the tutorship account.

The bank is clearly liable for these items, as the minor's funds were used by the natural tutrix for the payment of her personal obligations, and with full knowledge of this fact upon the part of the bank.

■ 5. The item of $110 and the five items, each of $164.25, fall under one general head.

Mrs. Leadman personally became indebted to the bank in the sum of, approximately, $10,000. She gave the bank her personal note, which was renewed by the bank from time to time, and on which interest was constantly accruing, for which petitioner, the minor, was in no manner liable. All of the items above named represent interest on her personal note, paid at different times by Mrs. Leadman out of the funds of the minor in the tutorship account in the bank.

Mrs. Leadman pledged as collateral for her personal note of $10,000 some participating certificates of the City Savings Bank & Trust Company. During the existence of the loan, the collateral was changed and Jackson-Harrison Company mortgage real estate bonds were substituted in a like amount. All the collateral pledged belonged to petitioner, the minor, both

principal and interest. Under instructions given by Mrs. Leadman, all interest payable on the collateral was to be deposited to the credit of Mrs. Leadman, tutrix of G. M. Leadman, Jr., and it was so deposited. As the personal loan became due, the interest was paid out of the tutrix account.

The bank could not accept this collateral under the condition that the interest was payable to the minor, to whom the collateral belonged, and then take the position that, because the bank could have insisted that the pledge cover both principal and interest, it could have foreclosed on both, and had the right to take it back, after it was deposited to the credit of the minor. We do not think that the bank had the right to use the minor's funds to pay the interest on the personal note of the tutrix.

 6. As to the remaining item of $114:

In her capacity as natural tutrix, Mrs. Leadman placed a note of the Davis Safe Company for $2,000 in the bank for collection. This note had been purchased by her with the minor's funds. In June, 1928, a payment of $114 was made to the bank, and a deposit slip was made out by the bank to the credit of Mrs. Leadman, tutrix; but the bookkeeper posted this to the credit of the personal account of Mrs. Leadman instead of her account as tutrix. Mrs. Leadman has drawn the amount out, and the bank did not know of the error until this suit was brought.

The bank had notice that this note and its proceeds belonged to the minor, and that the proceeds should be deposited to the credit of the minor. This was not done.

The bank is clearly liable, and the minor must recover.

 At the time all of the above-mentioned transactions were had petitioner was an unemancipated minor, and was unable to protect his interests, even had he had knowledge thereof, and no court ever authorized any of these transactions.

All of the checks and receipts in this case, by which funds belonging to the petioner, were applied and received by the bank in payment of personal obligations, due by Mrs. Jessie T. Leadman to the bank, were signed either "Mrs. Jessie T. Leadman, Tutrix G. M. Leadman," or "Mrs. Jessie T. Leadman, Tutrix G. M. Leadman, Jr."

Defendant bank's defense, however, is that the account styled "Mrs. Jessie T. Leadman, Tutrix of Gabe M. Leadman, Jr.," was so carried solely for the convenience of Mrs. Leadman and that the funds in the account were so commingled as to make identification impossible.

The trial judge, in his written opinion, answers this contention as follows:

"The general defense is made that the Tutrix Account was not strictly a trust account, but was a mixed account containing the funds of the trust as well as the personal funds of Mrs. Leadman.

"It is conceded that where an account is conducted in a manner indicating its fiduciary character the presumption is that funds deposited in that account are trust funds, but that such presumption yields to proof that they are mixed funds, and the argument is made that withdrawals by a trustee

from a mixed bank account for purposes other than the trust will be considered as having been drawn from portions of the fund belonging to the trustee. Then counsel proceeds to pick out certain items deposited to the trust fund which it is claimed belonged to Mrs. Leadman, personally. Mention is made of the deposit of the proceeds of sale of two mortgage notes of Shreveport Ice & Brewing Company in the principal sum of $10,000.00 to the trust account, when the notes belonged to Mrs. Leadman. We first have the general testimony of Mrs. Leadman that the only sums deposited to the trust were, first, funds belonging to the minor, and secondly, the funds of her own which were deposited in the trust account to repay loans, as far as possible, which the trust fund had made to her personally. Prior to the deposit above mentioned, $10,000.00 of Peavy-Wilson notes belonging to the minor had been sold, and the proceeds deposited to Mrs. Leadman, personally. Then if our memory serves us correctly, the minor furnished several thousand dollars of the funds which went to the purchase of the two above-mentioned notes.

"But there is (are) specifically picked out under this theory the following items which are more than sufficient in amount to cover those items which we have mentioned as being possibly allowable:

Proceeds of Saenger-Ehrlich
bonds ..................... $2590.00
Interest Caddo-Bossier bonds.... $ 750.00

"The Saenger bonds undoubtedly belonged to Mrs. Leadman personally, and

the principal deposit as to this was made on January 3, 1933.

"The Caddo-Bossier bonds were purchased with $3,000.00 of personal funds and $2000.00 of trust funds, and after emancipation plaintiff has repudiated this investment. To the extent of $2,000.00 they belonged to plaintiff, tentatively, until repudiated.

"Almost from the very beginning Mrs. Leadman, personally, was largely indebted to Mrs. Leadman, Tutrix, and the mere fact that she from time to time repaid some of these amounts would not result in the trust being a mixed fund."

We concur in the facts as found by the trial judge and in the conclusion reached by him as to the nature of the fund.

7. It must be remembered that the funds and securities mentioned in articles 1 to 21, inclusive, of the original petition represented insurance by the minor on the life of his deceased father, G. M. Leadman, Sr., under policies in which the minor was named beneficiary, together with interest and revenues received from the investment thereof, and were in no manner subject to the testamentary usufruct in favor of his mother, Mrs. Jessie T. Leadman.

It must be remembered also that the funds received by the bank and applied to the payment of the personal obligations of the natural tutrix to the bank have never been returned to the minor by the tutrix or by the bank.

The natural tutrix opened an account with defendant bank, as tutrix of the minor, with a deposit of approximately $15,000 insurance, and thereafter she deposited sev-

eral thousand dollars additional belonging to the minor, being his portion of the proceeds of property sold, and, when the tutrix' account with the bank was closed, the minor had to his credit with the bank the sum of $5.62.

8. In the case entitled Gabe M. Leadman v. Mrs. Jessie L. Brewster, No. 64,215 on the docket of the District Court, it appears from the allegations of plaintiff's first supplemental petition filed herein that the minor sued his mother and natural tutrix for an accounting of the administration of his property and affairs and secured judgment against her on the 11th day of July, 1934, in the sum of $19,152.62, with legal interest on $15,734.47 from November 2, 1933, until paid, and all costs.

Under a writ of fieri facias issued in execution of this judgment, all property belonging to the mother and natural tutrix of the minor was seized and sold at public auction, after due advertisement, and was bid in on September 5, 1934, for the price of $13,780 by petitioner, who was authorized to retain in his hands the sum of $2,000, representing the amount of superior liens, privileges, and mortgages on the property adjudicated.

It is admitted by petitioner that the judgment of $19,152.62 obtained by him must be credited with the sum of $11,588.75, the net proceeds of the sale, as of date September 5, 1934, leaving a balance due by the natural tutrix to the minor of $7,563.87. The entire demand of plaintiff in this case is for the sum of $6,383.65, and he has recovered judgment in the sum of $1,558.65.

It is not pretended by the bank or by the natural tutrix of plaintiff that $1 has ever been paid plaintiff upon his demand in the present case.

9. The contention of defendant bank that the natural tutrix confessed judgment in favor of the minor, in the suit for accounting, for the purpose of permitting a disguised donation of all her property to her minor son, is not supported by the facts of the case.

10. An accounting of the natural tutrix to the minor appears in the record, and the complaint is made by the bank that the natural tutrix did not charge the emancipated minor "with cost of his maintenance, commissions as tutrix, etc.," citing Mercier v. Canonge, 12 Rob. 385, 394.

In Succession of Applegate, 39 La.Ann. 400, at page 402, 2 So. 42, 43, in reviewing the Mercier Case, the court said that in that case "the tutor was required to charge the expenses of his minor children to the revenues derived from their separate estate, in order to subject the revenues of *the insolvent community* to the action of its creditors." (Italics ours.)

The court further said in its opinion: "In order to claim shelter under the principles of that decision, the administratrix would be required to make proof of the following facts:

"That *the community* between Applegate, the deceased, and his first wife, was *insolvent*; that he had no other property; that the income of his minor children out of their separate estate was about sufficient to meet the cost of their maintenance and

education; and that the creditors, whose rights she has undertaken to champion, were creditors *at the date of the dissolution* of the first community, or at least during the years for which she proposes to charge the minors for their maintenance and education." (Italics ours.)

See, also, Newman v. Irwin, 43 La.Ann. 1114, 10 So. 181; Newman v. Cooper, 48 La.Ann. 1206, 1210, 20 So. 722.

The community existing between plaintiff's mother and his father was solvent. Defendant bank was not a creditor of plaintiff's mother at the time of the dissolution of that community; and it is not shown that plaintiff's mother was insolvent.

Defendant bank, in our opinion, is not in a position to legally complain that plaintiff's mother, who was left $10,000 more insurance by his father than was left to him, and who was given the use of plaintiff's one-half of the property left by his father, did not charge him a commission as tutrix, or for board and lodging.

■ 11. The judgment rendered in favor of the plaintiff against his former tutrix is not absolutely binding against the defendant. If there are items of debit or credit which should not be on the account, or which should be on the account, then they can be taken into consideration in fixing the balance due plaintiff as a basis of recovery against the defendant bank.

The items complained of are as follows:

(1) Payment of judgment in favor of Henry Clay, which was a liability of the estate.......... $ 934.00

(2) Payment of note of J. G. Levy which was a liability of deceased .................... $ 620.00
(3) Attorney's fees in succession. $1,250.00
(4) Taxes .................... $4,250.83
(5) Interest charges............ $3,418.15

It is claimed that the interest charges should be stricken off and that one-half of the remaining items should be charged to the minor.

■ As the tutrix, the mother of the minor, was willed the usufruct, she is obliged to pay all taxes imposed on the property subject to the usufruct. Civ.Code, art. 578.

If the minor is charged with one-half of the remaining items, his half would amount to $1,402. If that sum is deducted from $7,563.87, balance due by tutrix to the minor, it would still leave a judgment larger in amount that the judgment rendered herein.

12. Plaintiff was emancipated October 2, 1933. On May 19, 1934, he brought suit against his mother for an accounting. On July 11, 1934, he obtained judgment against her. On September 18, 1934, the present suit was brought by plaintiff against defendant bank to recover the sum of $6,383.65, on transactions made between the bank and his natural tutrix, while he was an unemancipated minor, and was unable to protect his interests, even if he had had knowledge of such transactions.

The above state of facts clearly shows that, since his emancipation, plaintiff has vigorously asserted his rights in the courts,

and that his acts are very far from being in the nature of an acquiescence in, or ratification of, the transactions to his prejudice either of his natural tutrix or of his natural tutrix and the bank.

 The plea of defendant bank that plaintiff is estopped from asserting his claims in the present suit, because his mother, since his emancipation, has advised and assisted him in the management of his affairs, and her knowledge was his knowledge of such transactions and constituted ratification of same, is clearly without merit and is overruled.

Judgment affirmed.